Michael D. WRIGHT, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 95–1052–CIV–T–23B.

United States District Court,
M.D. Florida,
Tampa Division.

April 28, 1997.

Montfort S. Ray, Blairsville, GA, for Petitioner.

David N. Geier, U.S. Department of Justice, Tax Division, Washington, DC, for Respondent.

## ORDER

MERRYDAY, District Judge.

Before the Court are the petition to quash summonses (Doc. 1) and the respondent's motion to dismiss the petition (Doc. 4). Pursuant to 28 U.S.C. § 636, the magistrate judge considered these matters and filed a report and recommendation (Doc. 21), recommending that the petition be denied and the dismissal motion be granted. The petitioner filed objections to the report and recommendation (Doc. 24). The Court conducted a *de novo* review.

Upon consideration, the petitioner's objections are **OVERRULED** and the magistrate judge's report and recommendation is **ADOPTED** and **INCORPORATED** in this order. Accordingly, the petition to quash summonses (Doc. 1) is **DENIED**, and the motion to dismiss the petition (Doc. 4) is **GRANTED**. The Clerk is directed to close this file.

*REPORT AND RECOMMENDATION*

THOMAS G. WILSON, United States Magistrate Judge.

This suit was instituted by Michael D. Wright who asks this court to quash Internal' Revenue Service ("IRS") summonses directed to three banks that purportedly possess records of Wright's financial transactions. The United States of America, in response, seeks to enforce those summonses. Because the three legal challenges asserted by Wright do not support quashing the summonses, I recommend that the summonses be enforced.

### I.

The IRS is investigating Wright's income for the years 1991 and 1992. In furtherance of that investigation, Revenue Agent Elizabeth Johnson, on June 14, 1995, issued a summons to First Union Bank, to Village Bank of Florida, and to Sun Bank of Tampa, each directing the respondent to appear before her to testify and produce bank records relating to Wright and Northwest Pet Veterinary Hospital.[1] Johnson also issued that same day to Wright, the Veterinary Hospital, and the hospital's agent and manager notices that the summonses had been issued to the banks.

Following receipt of the notices, Wright timely filed his petition in this case, alleging that the summonses were defective on various grounds. He asked, accordingly, that the summonses be quashed.

The United States, in response, filed a motion to dismiss the petition to quash and sought an order enforcing the summonses (Doc. 4). In support of the motion, the Government filed a declaration by Revenue Agent Johnson under penalty of perjury stating that the documents and information are necessary to determine Wright's tax liability for the years 1991 and 1992. The declaration alleges further that the information sought is not already in the possession of the IRS. It also states that all administrative steps required by the IRS for the issuance of a summons have been taken, and that a Justice Department referral is not in effect for the years under investigation.

Subsequently, the matter was referred to me for a report and recommendation. Thereafter, in light of Johnson's sworn declaration, I treated the Government's motion to dismiss as a motion for summary judgment and directed Wright to file any opposing materials if he wished to controvert the declaration (Doc. 15). Wright did not submit any affidavits in response to the order. Wright, however, had previously filed a memorandum in opposition to the Government's motion in which he raised three contentions. Under these circumstances, the matter was scheduled for legal argument on Wright's contentions. At the hearing, the parties agreed that there were no factual disputes that warranted the presentation of evidence.

### II.

A. The Supreme Court held in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), that a summons is to be enforced upon a showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed." The Government ordinarily can make such a showing through the petition and the verified declaration. *See United States v. Southeast First National Bank of Miami Springs*, 655 F.2d 661, 664 (5th Cir.1981). In this case, the Government has presented such a declaration. Wright, despite having been afforded the opportunity to do so, presented no evidence in opposition to the declaration. Consequently, unless Wright can prevail on one of his three legal arguments, the Government is entitled to have the summonses enforced.

B. Wright contends, first, that service of a summons was not properly effected upon First Union Bank.[2] A summons issued under

---

1. Each summons noted that receipt of the requested records prior to the scheduled date would be accepted in lieu of a personal appearance.

2. This argument only pertains to service upon First Union Bank and does not challenge the service upon Village Bank of Florida and Sun Bank of Tampa.

26 U.S.C. 7602 for the examination of books and witnesses must be served "by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode." 26 U.S.C. 7603. The summons directed to First Union Bank was served by mailing an attested copy by certified mail from St. Petersburg to the attention of a specific individual in the bank's legal department in Jacksonville. The Government did not contend at the hearing that service of the summons in this manner satisfied the requirements of § 7603. Rather, the Government's argument is that First Union has made no complaint about the manner of service, and Wright has no standing to do so.

Wright is proceeding in this matter under 26 U.S.C. 7609. That section, *inter alia,* gives the right to a taxpayer to move to quash a summons issued, as here, to a "third-party recordkeeper" of information and documents pertaining to the taxpayer. 26 U.S.C. 7609(b)(2). The Government argues that, in such a proceeding, the taxpayer has no standing to assert objections to a summons that are personal to the third-party recordkeeper.

The Government's position is supported by the legislative history of § 7609. That section was added to the Internal Revenue Code in the Tax Reform Act of 1976 in order to establish a procedure by which a taxpayer could seek to forestall the disclosure of sensitive information, since typically the recipient of a third-party summons would have a far less intense interest than the taxpayer in protecting the information. *See* Sen. Rep. No. 94–938, 94th Cong.2d Sess. (1976), pp. 368–369 (reprinted in 4 U.S.Code Cong. & Adm. News (1976), pp. 3797–3798). The Senate Report explains the extent to which Congress intended that the taxpayer, in third-party recordkeeper situations, could challenge a summons (*id.* at pp. 370–371 (reprinted at U.S.C.C. & A.N., pp. 3799–3800)):

> In addition, the committee intends that the noticee would have standing to raise other issues which could be asserted by the third-party record keeper, such as asserting that the summons is ambiguous, vague or otherwise deficient in describing the material requested, or that the material requested is not relevant to a lawful investigation. In other words, the committee intends that the noticee will be allowed to stand in the shoes of the third-party record keeper and assert certain defenses to enforcement which witnesses are traditionally allowed to claim, but which may not be available to intervenors (under many court decisions) on [the] ground of standing.
>
> At the same time, it should be made clear that the purpose of this procedure is to facilitate the opportunity of the noticee to raise defenses which are already available under the law (either to the noticee or to the third-party witness) and that these provisions are not intended to expand the substantive rights of these parties. Also, of course, the noticee will not be permitted to assert as defenses enforcement issues which only affect the interests of the third-party record keeper, such as the defense that the third-party record keeper was not properly served with the summons (i.e., wrong address) or that it will be unduely [*sic*] burdensome for the third-party record keeper to comply with the summons.

 This passage makes clear that § 7609 was intended to permit the taxpayer to raise issues that relate to an interest in nondisclosure of information, but not to allow the taxpayer to assert issues that are of meaningful concern only to the third-party recordkeeper because they involve its burden to produce information. In this case, for example, it can make no real difference to the taxpayer whether First Union was served by mail or in person. Furthermore, a wide-spread financial institution like First Union may prefer to have a third-party summons mailed to a central location rather than have it personally served at some branch office. Consequently, the right to challenge the method of service should be limited in these situations to third-party recordkeepers. Wright's objection to service by mail should, therefore, be rejected for lack of standing. *King v. United States,* 684 F.Supp. 1038, 1041 (D.Neb.1987).

C. Wright contends further that the three summonses are unenforceable because the notice served on him did not contain an attested copy of the summonses. While

there is, arguably, a split of authority on this issue, the more persuasive decisions reject this contention.

As previously stated, the service of a summons under 26 U.S.C. 7603 requires the delivery of "an attested copy." [3] Section 7609 requires that the notice of the summons that must be sent to the taxpayer "shall be accompanied by a copy of the summons which has been served." There is no express requirement in that section (or anywhere else) that the notice to the taxpayer must be accompanied by an "attested" copy of the summons. In my view, that is the extent of the analysis needed on this issue. When Congress wanted an attested copy of the summons served on the respondent pursuant to § 7603, it said so. Since Congress did not state such a requirement in § 7609, the reasonable conclusion is that it did not want an attested copy sent along with the taxpayer's notice. This conclusion, moreover, has been accepted by the Ninth and Tenth Circuits. *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir.1995); *Codner v. United States*, 17 F.3d 1331, 1333 (10th Cir.1994).

Wright contends, nevertheless, that he should have been sent an attested copy because § 7609(a)(2) states that his notice may be "served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice." Since service upon the respondent under § 7603 requires delivery of an attested copy, Wright argues that he is entitled to one also.

However, as already pointed out, the preceding provision in § 7609(a)(1) simply required service of "a copy of the summons," not an "attested" copy of the summons. It is impossible to believe that, if Congress had wanted a taxpayer-noticee to receive an attested copy, it would have ignored the direct approach of simply placing the word "attested" in § 7609(a)(1), and would instead have opted for the circuitous approach advocated by Wright.

Furthermore, the Ninth and Tenth Circuits have pointed out another flaw in the argument Wright asserts. Section 7609(a)(2) states, in pertinent part:

> Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned.

In other words, service of a notice upon a taxpayer can be accomplished in three ways, and only one of those refers to § 7603. Thus, under Wright's approach, if notice were personally served in accordance with § 7603, an attested copy would be required, whereas if notice were served by mail or by leaving it with the person summoned, an attested copy would not be necessary. Such a scheme would be illogical, as the Tenth Circuit indicated (17 F.3d at 1334), and absurd, as the Ninth Circuit said (59 F.3d at 120).

Wright asserts that the Eighth Circuit has ruled in *Mimick v. United States*, 952 F.2d 230 (8th Cir.1991), that an attested copy of the summons must be served on the taxpayer-noticee. That, however, appears to be a misreading of the Eighth Circuit's decision in *Mimick*. The fault identified in *Mimick* seems to be that an attested copy was not even served on the third-party recordkeepers, as expressly required by § 7603. Significantly, *Mimick* not only did not discuss the statutory language of § 7609 that was analyzed by the Ninth and Tenth Circuits, but it did not even mention that provision. consequently, *Mimick* does not appear to be inconsistent with the decisions of the Ninth and Tenth circuits, and in all events cannot demonstrate that the persuasive reasoning of

---

**3.** The attestation on the summons states nothing more than that it has been examined and found to be a true and correct copy of the original. *See Mimick v. United States*, 952 F.2d 230 (8th Cir. 1991). An inspection of one of the summonses served upon a third-party recordkeeper in this case revealed that an attestation had been stamped upon the copy and appropriately signed. Wright does not contend that the copies served upon the recordkeepers were not attested, but only that the copies he received with his notice were not attested. The Government does not dispute the lack of an attestation on the copies Wright received.

those cases was erroneous.[4]

■ The revenue agent, therefore, was not required by § 7609 to serve an attested copy of the summonses upon the noticees. Accordingly, enforcement of the summonses cannot be denied for a failure to do so.

D. Wright asserts, finally, that the summonses were fatally defective because the copies of the summonses did not contain the original signature of an IRS employee empowered to authorize their issuance. The Government does not contend that Wright lacks standing to make this argument. Rather, it simply argues that original signatures of the approving official were not required on the copies.

The authority to issue a summons has been delegated to various IRS employees in a document known as "Delegation Order No. 4," which was published in the Federal Register in March 1990. Delegation Order No. 4 generally authorizes revenue agents such as Johnson to issue a summons, except that "in the instance of a summons to a third party witness, the issuing officer's case manager, group manager, or any supervisory official above that level, [must have] in advance personally authorized the issuance of the summons." Delegation Order No. 4, § 1(d). Delegation Order No. 4 states further (id.):

Such authorization shall be manifested by the signature of the authorizing officer on the face of the original and all copies of the summons or by a statement on the face of the original and all copies of the summons, signed by the issuing officer, that he/she had prior authorization to issue said summons and stating the name and title of the authorizing official and the date of authorization.

The summonses in this case were approved by Pat Lam, the Group Manager, and that individual's signature appears on the copies of the summons. Wright argues, however, that Lam's original signature had to appear on each copy.

The Government responds that Wright is attempting to insert the word "original" into the relevant sentence. As written, the provision simply says, "Such authorization shall be manifested by the signature of the authorizing officer on the face of the original and all copies of the summons." Wright is arguing that it should be interpreted to read, "Such authorization shall be manifested by the *original* signature of the authorizing officer on the face of the original and all copies of the summons." While this is a possible interpretation of the provision, it would be unusual to require an original signature on all copies. Consequently, the absence of express language specifying such an unusual requirement makes Wright's construction less plausible.

Moreover, it is highly unlikely that the IRS would have imposed on its supervisory officials the additional burden (and potential trap) of signing all copies of summonses they approve. This is particularly so since there is no apparent benefit from having an original signature on every copy.

In addition, the plaintiff's construction of § 1(d) of the Delegation Order overlooks that official approval can be manifested in two ways: by the signature of the approving officer, or by a statement of the revenue agent that she had prior authorization from a specified official. In the latter circumstance, the approving officer's signature need not be obtained on even the original summons. It is too anomalous to think that the IRS created a scheme whereby either an approving official had to sign every copy of a summons, or her signature could be dispensed with altogether.

■ In short, Wright's interpretation of § 1(d) of Delegation Order No. 4 simply makes no sense. Accordingly, enforcement of the summonses cannot be denied on the ground that Group Manager Lam did not sign every copy of the summonses. Since Wright does not contend that Lam failed to sign the originals, no violation of Delegation Order No. 4 has been shown.

---

**4.** Similarly, the decision from the Orlando Division referred to by Wright is inapposite since it involved the service of a summons under § 7603, and not the service of a notice under § 7609 (*See* Doc. 8, Attachment; *United States v. Davis,* Case No. 91–333–Misc–Orl–19).

III.

For the foregoing reasons, the summonses directed to the three banks should be enforced. The Government made the showing required for enforcement under *United States v. Powell, supra,* through the declaration of Revenue Agent Johnson. Although Wright raised three legal challenges to enforcement, those challenges should be rejected. I therefore recommend that the petition to quash summonses (Doc. 1) be denied, and that the motion to enforce the IRS summonses (Doc. 4) be granted.

DATED: MARCH 10, 1997

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).