50 F.3d 856
 PUEBLO OF SANDIA, Sandoval Environmental Action Community,
Earth First!, Sandia Mountain Wildlife &
Conservation Association, Sierra Club,
Wildlife Rescue of New Mexico,
Inc., Plaintiffs-Appellants
v.
UNITED STATES of America, C. Phil Smith, Cibola National
Forest Supervisor, Defendants-Appellees.
 No. 93-2188.
 United States Court of Appeals,
Tenth Circuit.
 March 14, 1995.
 
 Eric Ames (Grove T. Burnett with him on the briefs), of Burnett Law Firm, Santa Fe, NM, for plaintiffs-appellants.
 Andrea Nervi Ward, Attorney, Dept. of Justice, Washington, DC (Myles E. Flint, Deputy Asst. Atty. Gen., Washington, DC, John J. Kelly, U.S. Atty., and John W. Zavitz, Asst. U.S. Atty., Albuquerque, NM, J. Carol Williams, Attorney, Dept. of Justice, Washington, DC, and Mary Ann Joca, U.S. Dept. of Agr., Albuquerque, NM, of counsel, with her on the brief), for defendants-appellees.
 Before SEYMOUR, Chief Judge, LOGAN, Circuit Judge, and DAUGHERTY,* District Judge.
 SEYMOUR, Chief Judge.
 
 
 1
 The Pueblo of Sandia and various environmental groups brought suit for declaratory and injunctive relief against the United States and a National Forest Service supervisor, alleging that the Forest Service failed to comply with the National Historic Preservation Act (NHPA), 16 U.S.C. Secs. 470 et seq., in its evaluation of Las Huertas Canyon in the Cibola National Forest. The Pueblo asserts that the New Mexico canyon contains numerous sites of religious and cultural significance to the tribe, qualifying the canyon as a "traditional cultural property" eligible for inclusion in the National Register of Historic Places. The Forest Service, however, concluded that the canyon did not constitute a traditional cultural property and instituted a new management strategy for it. The district court granted summary judgment for the Forest Service, finding that it had made a reasonable and good faith effort to identify historic properties. Because we conclude that the Forest Service's efforts were neither reasonable nor in good faith, we reverse and remand.
 
 I.
 
 2
 Las Huertas Canyon is located in the Sandia Mountains northeast of Albuquerque, New Mexico. Lying within the Cibola National Forest, the canyon is under the supervision of the Forest Service. The Sandia Pueblo reservation is nearby, and tribal members visit the canyon to gather evergreen boughs for use in significant private and public cultural ceremonies. Aplt.App. at 109-11. They also harvest herbs and plants along the Las Huertas Creek which are important for traditional healing practices. Id. at 111. The canyon contains many shrines and ceremonial paths of religious and cultural significance to the Pueblo. Id. at 108-11.
 
 
 3
 In July 1988, the Forest Service released a Draft Environmental Impact Statement (DEIS) detailing eight alternative management strategies for Las Huertas Canyon. After an extended comment period, the Forest Service selected a ninth alternative, Alternative I, as the preferred strategy. Alternative I required the realignment and reconstruction of the Las Huertas Canyon Road and additional improvements to the area, including the rehabilitation and expansion of several picnic grounds and the installation of sanitary facilities at other locations. Aplt.App. at 48.
 
 
 4
 Voicing concerns that the strategy would adversely impact traditional cultural properties and practices in the canyon by encouraging additional traffic and visitation to the area, the Pueblo filed an administrative appeal of the decision. The Deputy Regional Forester affirmed the decision, altering the snow plowing and road closure provisions of Alternative I in response to complaints from other appellants. The decision became administratively final in January 1990 when the Chief of the Forest Service declined to review it.
 
 
 5
 The Pueblo filed this suit in federal court, alleging numerous statutory violations.[1] The Pueblo subsequently amended the complaint to plead a violation of the NHPA, 16 U.S.C. 470 et seq. The Pueblo alleged that the Forest Service failed to comply with section 106 of the NHPA when it refused to evaluate the canyon as a traditional cultural property eligible for inclusion on the National Register.
 
 
 6
 The parties filed cross motions for summary judgment on the issue of NHPA compliance. By the time the district court heard the motions, the State Historic Preservation Officer (SHPO) had concurred in the Forest Service's conclusion that certain specific sites near the roadway and picnic grounds were not eligible for the National Register. In a Memorandum Opinion and Order entered April 30, 1993, the district court noted that "[t]he administrative record is silent as to whether any of the sites found were evaluated [by the Forest Service] against the National Register Criteria as required by [the NHPA], and whether the sites met the criteria." Memorandum Opinion and Order (April 30, 1993) at 11 (Order). The court accepted the SHPO's concurrence as "evidence that the Forest Service met the substantive requirements with respect to the roadway and the picnic area." Id.
 
 
 7
 Although concerned that the Forest Service "does not appear to have taken the requirements of [the NHPA] very seriously," the court relied on the agency's assertion that it would diligently pursue information on the potential historic value of other individual sites within the canyon. Id. at 12. On that basis, the court granted summary judgment for defendants, and plaintiffs filed this appeal.
 
 
 8
 On May 13, 1993, the SHPO concurred in the Forest Service's final conclusion that "there is no evidence that there are Pueblo Indian traditional cultural properties in Las Huertas Canyon." Aplee.Br., Addendum at 1, 3. Plaintiffs filed this appeal on June 19, 1993. Significantly, nine months later the SHPO withdrew his concurrence upon receiving evidence suggesting that traditional cultural properties existed in Las Huertas Canyon. Aplt.Supp.Br., Addendum 1. The SHPO stated:
 
 
 9
 We were surprised to see the [affidavits of Dr. Elizabeth Brandt and Phillip Lauriano] since we had been informed that the Cibola National Forest had received no comments on [Traditional Cultural Properties] from the [All Indian Pueblo Council] or from any pueblos (cf. Report 1993-03-054, prepared by Dr. Joseph A. Tainter, dated April 29, 1993). Our previous consultations on this undertaking were based on Dr. Tainter's report. This documentation is relevant to our consultations on this undertaking. I am concerned that our not having received the affidavits has affected our ability to consult appropriately under Section 106 of the National Historic Preservation Act.
 
 
 10
 Id. The SHPO concluded that the withheld information had a substantial impact on the inquiry into the canyon's eligibility for the Historic Register. He wrote:
 
 
 11
 Much of our consultation, dating back to September of 1992, concentrated on determining what would represent a "reasonable" attempt to identify [Traditional Cultural Properties] that may be affected by the project. Bulletin 38 ... states that "a 'reasonable' effort depends in part on the likelihood that such properties may be present." Mr. Lauriano's statement, supported by the ethnographic overview provided by Dr. Brandt, indicates that Las Huertas Canyon is used for ceremonial purposes, contains plants and soils used in traditional ceremonies and contains traditional trails that lead to other [traditional cultural properties]. This information suggests that properties that may be eligible to the National Register of Historic Places may be affected by the proposed improvements to the Las Huertas Canyon Road and recreational facilities. It is my opinion that we do not have enough information to make a determination of eligibility.
 
 
 12
 Id. Consequently, the SHPO recommended an ethnographic analysis of the canyon to further evaluate the possibility that it contained traditional cultural properties.
 
 
 13
 Consistent with Bulletin 38, this analysis should include interviews with appropriate pueblo representatives, field inspections and documentation. I recommend that the Forest Service hire a professional ethnographer to conduct this analysis. An independent professional is most likely to be able to work out any impasse that may have developed between the pueblos and the Forest Service. I also believe that this procedure will give the Pueblos a reasonable opportunity to provide us with enough documentation to conduct a formal determination of eligibility as outlined in Bulletin 38.
 
 
 14
 Id. (citations omitted).
 
 
 15
 We review the district court's summary judgment de novo. Housing Authority v. United States, 980 F.2d 624, 628 (10th Cir.1992).
 
 II.
 
 16
 The NHPA requires the Forest Service to "take into account the effect of [any] undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." NHPA, Sec. 106, 16 U.S.C. Sec. 470f (1993). Section 106 also mandates that the agency afford the Advisory Council on Historic Preservation "a reasonable opportunity to comment" on the undertaking. Id.
 
 
 17
 The Advisory Council has established regulations for federal agencies to follow in complying with section 106. See 36 C.F.R. Sec. 800. The process is designed to foster communication and consultation between agency officials, the SHPO, and other interested parties such as Indian tribes, local governments, and the general public.
 
 
 18
 First, the Agency Official must review all existing information on the site, request the SHPO's views on ways to identify historic properties, and seek information from interested parties likely to have knowledge about historic properties in the area. 36 C.F.R. Sec. 800.4(a). In light of this information, the agency determines any need for further investigation.
 
 
 19
 In consultation with the SHPO, the agency then must make a "reasonable and good faith effort to identify historic properties that may be affected by the undertaking and gather sufficient information to evaluate the eligibility of these properties for the National Register." 36 C.F.R. Sec. 800.4(b). Finally, for each property identified, the agency official and the SHPO must evaluate the property on the basis of the National Register criteria to determine its eligibility for inclusion. 36 C.F.R. Sec. 800.4(c).
 
 
 20
 The Pueblo claims that the sites within the Las Huertas Canyon are traditional cultural properties which are thus eligible for inclusion in the National Register.[2] The Pueblo asserts that the Forest Service's conclusion to the contrary stems from that agency's failure to make a "reasonable and good faith effort" to identify historical properties.
 
 A. Reasonable Effort
 
 21
 The Forest Service contends that it engaged in reasonable efforts to identify historic properties in Las Huertas Canyon. The record reveals that the Forest Service did request information from the Sandia Pueblo and other local Indian tribes, but a mere request for information is not necessarily sufficient to constitute the "reasonable effort" section 106 requires. Because communications from the tribes indicated the existence of traditional cultural properties and because the Forest Service should have known that tribal customs might restrict the ready disclosure of specific information, we hold that the agency did not reasonably pursue the information necessary to evaluate the canyon's eligibility for inclusion in the National Register.
 
 
 22
 During the assessment phase of the section 106 process, the Forest Service mailed letters to local Indian tribes, including the Sandia Pueblo, and individual tribal members who were known to be familiar with traditional cultural properties. Aplt.App. at 159-65. The letters requested detailed information describing the location of the sites, activities conducted there, and the frequency of the activities. Id. They also asked tribes to provide maps of the sites, drawn at a scale of 1:24,000 or better, as well as documentation of the historic nature of the property. Id.
 
 
 23
 In addition to mailing form letters to the tribes and individuals, Forest Service officials also addressed meetings of the All Indian Pueblo Council and the San Felipe Pueblo. Aplt.App. at 177, 181. The officials informed the groups that traditional cultural properties are eligible for inclusion in the National Register and requested the same specific information required in the letters. Id.
 
 
 24
 None of the tribes or individuals provided the Forest Service with the type of information requested in the letters and meetings. We conclude, however, that the information the tribes did communicate to the agency was sufficient to require the Forest Service to engage in further investigations, especially in light of regulations warning that tribes might be hesitant to divulge the type of information sought.
 
 
 25
 Prior to its final determination on April 29, 1993 that Las Huertas Canyon contained no traditional cultural properties, the Forest Service was aware of numerous claims to the contrary. As early as January 5, 1987, the Governor of the Sandia Pueblo informed the Forest Service that the Las Huertas Canyon was an area "of great religious and traditional importance to the people of Sandia Pueblo." Aplt.App. at 130. The minutes of a Las Huertas Canyon Work Group meeting on March 10, 1987 reveal that the group knew that Native Americans used the canyon area for a number of ceremonial, religious, and medicinal purposes. Id. at 133. During the period of public comment on the eight alternatives, the Sandia Pueblo supported alternative C, which it believed would be most likely "to permit the Sandia members to perform secret, traditional activities in more seclusion." Id. at 135.
 
 
 26
 On August 9, 1989, the Regional Forester took the affidavit of Philip Lauriano, an elder and religious leader of the Sandia Pueblo. Mr. Lauriano listed several "long-standing religious and traditional practices" which take place in the canyon and alluded to sacred sites which it contains. Aplt.App. at 108-09. In 1992, Dr. Elizabeth Brandt, a highly qualified anthropologist who is an expert on the Sandia Pueblo, provided a detailed ethnographic overview of the tribe's religious and cultural connections to the canyon.[3] Dr. Brandt noted the canyon's significance to the Pueblo as a source of herbs and evergreen boughs, which have been an integral part of certain Pueblo ceremonies for at least 60 years.[4] Id. at 110-11. She also described certain ceremonial paths and sites in the canyon which "serve as gateways for access to the spirit world," concluding that
 
 
 27
 [t]hese sites and their functions would be significantly impaired if not totally destroyed as a result of the planned development of the Canyon, thus cutting off spiritual access for religious leaders and those responsible for the actions which occur at these shrines. These sites are critical to the religious practice, cultural identity, and overall well-being of the Pueblo.
 
 
 28
 Id. at 111. Noting the secrecy which is crucial to Pueblo religious and cultural practices, Dr. Brandt expressed concern that the proposed development would allow the outside world to intrude upon and negatively impact these practices.[5] Based on these factors, she concluded that "Las Huertas Canyon constitutes a Traditional Cultural District with multiple Sites for the Sandia Tribe." Id. at 112.
 
 
 29
 Furthermore, the Forest Service received communications clearly indicating why more specific responses were not forthcoming. At the meeting with the San Felipe Pueblo, tribal members indicated that "[t]hey did not want to disclose any specific details of site locations or activities." Aplt.App. at 177. A representative of the Sandia Pueblo made the same claim at the All Indian Pueblo Council meeting. Id. at 181. Dr. Brandt also commented upon the Pueblo people's general unwillingness "to divulge any information regarding their religious practices." Id. at 113.
 
 
 30
 This reticence to disclose details of their cultural and religious practices was not unexpected. National Register Bulletin 38 warns that "knowledge of traditional cultural values may not be shared readily with outsiders" as such information is "regarded as powerful, even dangerous" in some societies. Aplt.App. at 88. Joseph Tainter, an archeologist for the Forest Service, "acknowledged that [P]ueblos are often reluctant to provide such information" and promised confidential treatment of any communications. Id. at 181. The Work Study Group also noted that "[k]nowledge of Native American attitudes towards divulging information regarding Forest use and past experience by Forest Service cultural resources personnel indicates [sic] that general requests of tribes for information ... will go unanswered." Id. at 134.
 
 
 31
 Determining what constitutes a reasonable effort to identify traditional cultural properties "depends in part on the likelihood that such properties may be present." National Bulletin 38, Aplt.App. at 86. Based on the information contained in the Lauriano and Brandt affidavits, the SHPO ultimately concluded that the "properties [ ] may be eligible to the National Register of Historic Places" but "we do not have enough information to make a determination of eligibility." Aplt.Supp.Br., Addendum 1.[6] We agree. The information communicated to the Forest Service as well as the reasons articulated for the lack of more specific information clearly suggest that there is a sufficient likelihood that the canyon contains traditional cultural properties to warrant further investigation.[7] We thus hold that the Forest Service did not make a reasonable effort to identify historic properties.
 
 B. Good Faith Effort
 
 32
 The Pueblo also claims that the Forest Service failed to make the requisite good faith effort to identify traditional cultural properties in Las Huertas Canyon. It bases this assertion on the fact that the Forest Service withheld relevant information from the SHPO during the required consultation process. The district court expressed concern about the Forest Service's commitment to the section 106 process and placed great weight upon the SHPO's concurrence in granting summary judgment. Thus, the withdrawal of that concurrence upon discovery of the withheld information suggests that the Forest Service did not put forth a good faith effort to identify historic properties.
 
 
 33
 The regulations require that "[i]n consultation with the [SHPO], the Agency Official shall make a reasonable and good faith effort to identify historic properties." 36 C.F.R. Sec. 800.4(b). Indeed, consultation with the SHPO is an integral part of the section 106 process. See Attakai v. United States, 746 F.Supp. 1395, 1407 (D.Ariz.1990) ("[T]he regulations clearly require consultation with the SHPO.") Affording the SHPO an opportunity to offer input on potential historic properties would be meaningless unless the SHPO has access to available, relevant information. Thus, "consultation" with the SHPO mandates an informed consultation.
 
 
 34
 The Forest Service did not provide the SHPO copies of the Lauriano and Brandt affidavits until after the consultation was complete and the SHPO had concurred. See Aplt.Supp.Br., Addendum 1. In fact, the Forest Service informed the SHPO during consultation that "[c]onsultations with pueblo officials and elders, and other users of the Las Huertas Canyon area, disclosed no evidence that the ... area contains traditional cultural properties." Aplt.App. at 152. The SHPO's initial concurrence was based on this report. Aplt.Supp.Br., Addendum 1. Once the SHPO acquired access to the withheld information, he withdrew his concurrence, noting the relevance of the documents and his concern that "our not having received [them] has affected our ability to consult appropriately under Section 106 of the [NHPA]." Id.
 
 
 35
 Moreover, the regulations require that once the agency concludes that no historic properties are present, it must provide the SHPO documentation of that finding. 36 C.F.R. Sec. 800.4(d). The Forest Service rendered its final decision that no traditional cultural properties exist in Las Huertas Canyon on April 29, 1993. Aplee.Br., Addendum. The report was sent to the SHPO on May 4, 1993, prompting the SHPO's concurrence nine days later. The relevant documents, i.e., the Lauriano and Brandt affidavits, were not communicated to the SHPO until January 14, 1994. Aplt.Supp.Br., Addendum 1. Thus, the Forest Service failed to provide documentation of its decision to the SHPO in a timely manner.
 
 
 36
 Prior to the SHPO's letter revealing that the Forest Service withheld relevant information, the district court expressed reservations about the Forest Service's approach to the section 106 process. The court noted its concern "that the Forest Service does not appear to have taken the requirements of this Act very seriously." Order at 12. Those reservations were partially alleviated by the fact that the SHPO had concurred, at that time, with part of the Forest Service's new management plan. Id. at 11. By withholding relevant information from the SHPO during the consultation process, however, the Forest Service further undermined any argument that it had engaged in a good faith effort. We thus hold that the Forest Service did not make a good faith effort to identify historic properties in Las Huertas Canyon.
 
 
 37
 Because we conclude that the Forest Service did not make a reasonable and good faith effort in its evaluation of Las Huertas Canyon, we REVERSE the judgment of the district court and REMAND for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Frederick A. Daugherty, Sr., Senior United States District Judge for the Western, Eastern, and Northern Districts of Oklahoma, sitting by designation
 
 
 [1]
 Sandia Pueblo alleged that the Forest Service's approval of the Final Environmental Impact Statement (FEIS) violated the National Environmental Policy Act, 42 U.S.C. Secs. 4321, et seq. (NEPA); the National Forest Management Act, 16 U.S.C. Secs. 1600 et seq. (NFMA); the Clean Water Act, 33 U.S.C. Secs. 1251 et seq. (CWA); the American Indian Religious Freedom Act, 42 U.S.C. Sec. 1996 (AIRFA); and the Administrative Procedures Act, 5 U.S.C. Secs. 701 et seq. (APA). The Pueblo abandoned the NFMA, AIRFA, and CWA claims and does not appeal the district court's grant of summary judgment for defendants on the NEPA and APA claims
 
 
 [2]
 The National Register Bulletin 38 provides that a traditional cultural property is "eligible for inclusion in the National Register because of its association with cultural practices or beliefs of a living community that (a) are rooted in that community's history, and (b) are important in maintaining the continuing cultural identity of the community." Aplt.App. at 82
 
 
 [3]
 Although the record indicates that Dr. Brandt gave her affidavit on April 13, 1992, it is unclear when it was given to the Forest Service. The agency, however, refers to the Brandt affidavit in its brief, Aplee.Br. at 28 n. 11, and does not claim that it did not have the affidavit at the time it made its final decision that Las Huertas Canyon contained no traditional cultural properties. Therefore, we presume that the Brandt affidavit was a part of the record upon which the Forest Service based its April 29, 1993 decision
 
 
 [4]
 Oral testimony establishes that the Pueblo have gathered evergreen boughs in Las Huertas Canyon for at least 60 years. Dr. Brandt notes, however, that the canyon has probably played a role in tribal religious and cultural practices for centuries as archeological evidence reveals that the Pueblo village has remained at essentially the same site since the 1300s. Aplt.App. at 112
 
 
 [5]
 Dr. Brandt asserted that the safety of the Pueblo members might be implicated, stating that Pueblo members reported having been "placed at gunpoint by persons while gathering evergreens." Aplt.App. at 112. She also pointed to examples of shrines in other areas having been overrun or desecrated as a result of increased traffic and visitation. Id
 
 
 [6]
 Although the letters containing the SHPO's concurrence and subsequent withdrawal of that concurrence were not a part of the record below, we take judicial notice of them on this appeal. See Clemmons v. Bohannon, 956 F.2d 1523, 1532 & n. 2 (10th Cir.1992) (Seymour, J., dissenting) (en banc) (judicial notice of government reports); see also Clappier v. Flynn, 605 F.2d 519, 535 (10th Cir.1979) (judicial notice of official governmental publications)
 
 
 [7]
 The SHPO has recommended that the Forest Service conduct a ethnographic analysis of Las Huertas Canyon
 Consistent with Bulletin 38, this analysis should include interviews with appropriate Pueblo representatives, field inspections and documentation.... An independent professional [ethnographer] is most likely to be able to work out any impasse that may have developed between the Pueblos and the Forest Service.
 Aplt.Supp.Br., Addendum 1; see Aplt.App. at 88. We note that it is the role of the SHPO to recommend further actions to identify historic properties. See 36 C.F.R. Sec. 800.4(a)(1)(ii).