**AMERICAN BANKERS ASSOCIATION, et al., Plaintiffs,**

**v.**

**NATIONAL CREDIT UNION ADMINISTRATION, Defendant,**

**America First Federal Credit Union, et al., Intervenors–Defendants.**

**No. 2:03CV621DAK.**

United States District Court, D. Utah, Central Division.

Dec. 8, 2004.

James S. Jardine, Kevin G Glade, John A. Adams, Ray Quinney & Nebeker, Salt Lake City, UT, for plaintiff.

Jeffrey E. Nelson, U.S. Attorney's Office, for defendant.

Stanley J. Preston, Harold G. Christensen, Julianne R. Blanch, Snow Christensen & Martineau, Paul Lambert, Bingham & McCutchen, Washington, DC, for intervenor-defendant.

## MEMORANDUM OPINION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Plaintiffs' Request for Invalidation of Agency Action, which asks this court to reverse the Defendant National Credit Union Administration's ("NCUA") decision to allow Tooele First Credit Union ("TFCU") to expand its geographic charter from Tooele county to Salt Lake, Summit, Morgan, Weber, and Davis counties, and Plaintiffs' Petition for Judicial Notice, which asks this court to consider evidence not considered by the agency below. Plaintiffs assert that the new six-county charter does not represent a "well-defined local community." Based on its determination allowing TFCU to expand its charter, the NCUA also permitted America First Credit Union, Goldenwest Federal Credit Union, and University of Utah Credit Union to expand their geographic charters into the same counties. These credit unions have intervened in the action as Defendants–Intervenors. Because the NCUA and Defendants–Intervenors' interests are aligned in this matter, the court will refer to them collectively as Defendants.

The court held a hearing on these matters on October 7, 2004. At the hearing, Plaintiffs were represented by Mr. James S. Jardine, the NCUA was represented by Assistant United States Attorney Jeffrey E. Nelson, and Defendants–Intervenors were represented by Mr. Harold G. Christensen and Mr. Paul J. Lambert. After carefully reviewing the parties' written submissions and oral arguments, as well as the facts and law relevant to this matter, the court enters the following Memorandum Opinion and Order.

## BACKGROUND

In 1990, the American Bankers Association ("ABA") sued the NCUA challenging the NCUA's policy of chartering credit unions in violation of the federal credit union statute in effect at that time. In February 1998, the United States Supreme Court ruled in favor of the ABA. *National Credit Union Administration v. First National Bank & Trust Co.,* 522 U.S. 479, 503, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). In response to that decision, Congress passed the Credit Union Membership Access Act ("CUMAA"). Pursuant to CUMAA a federal credit union may adopt a geographic model for its membership that consists of residents "within a well-defined local community, neighborhood, or rural district." 12 U.S.C. § 1759(b)(3). The word "local" was a new edition in the CUMAA. Under prior law, the NCUA could approve a community charter without determining whether the community was "local" in nature.

The NCUA was charged with issuing regulations consistent with the CUMAA and defining "well-defined local community." The NCUA acknowledged that Congress' new "local" requirement imposed a "more circumspect and restricted approach to chartering community credit unions." 63 Fed.Reg. at 72,012 (1998). The NCUA

also stated that a community credit union has a new burden "to demonstrate more definitively how it meets the local requirement." *Id.*

The NCUA promulgated rules setting forth the requirements for establishing a "well-defined local community" as follows: (1) the geographic area's boundaries must be clearly defined; (2) the charter applicant must establish that the area is a "well-defined local community, neighborhood, or rural district"; and (3) "[t]he residents must have common interests or interact." 63 Fed.Reg. 72,037 (1998). "Well-defined" means the proposed area has specific geographic boundaries, including a city, township, county, or clearly identifiable neighborhood. *Id.* The meaning of "local community" includes a variety of factors. "Most prominent is the requirement that the residents of the proposed community area interact or have common interests." *Id.* In determining interaction and/or common interests, relevant factors include "the existence of a single major trade area, shared government or civic facilities, or area newspaper." *Id.* "Conversely, numerous trade areas, multiple taxing authorities, and multiple political jurisdictions tend to diminish the characteristics of a local area." *Id.*

Other significant factors in determining whether the area is local in nature are population and geographic size. "A large population in a small geographic area or a small population in a large geographic area may meet NCUA community chartering requirements." *Id.* "Conversely, a larger population in a large geographic area may not meet NCUA community chartering requirements. It is more difficult for a major metropolitan city, a densely populated county, or an area covering multiple counties with significant population to have sufficient interaction and/or common interests, and to therefore demonstrate that

these areas meet the requirement of being 'local.' " *Id.*

The NCUA's approval of the TFCU's application and its decision that the six counties constitute a "well-defined local community" under the Federal Credit Union Act was summarized in a Board Action Memorandum dated March 26, 2003. The NCUA's three-member Board approved, by a two-to-one vote, the NCUA Action Memorandum at an NCUA Board Meeting on April 24, 2003. The transcript of the Board meeting is included by Plaintiffs even though it is not a part of the NCUA Record submitted in this case. Defendant has not objected to the meeting transcripts being a part of the administrative record.

The NCUA Action Memorandum, approved by the NCUA Board, lists the factors relied upon for the approval of the expanded community charter for TFCU:

1. Salt Lake, Davis and Weber Counties are in the OMB's Salt Lake Metropolitan Statistical Area ("MSA").

2. Five of the six counties are members of the Wasatch Front Regional Council ("WFRC") (Summit County is not a member).

3. The particular group of Wasatch Front counties represents a geographic oasis of population between Denver and Sacramento.

4. A significant portion of the residents of the six counties are members of the Church of Jesus Christ of Latter-day Saints.

5. Salt Lake City is a trade and social center for the six counties.

6. The University of Utah and Weber State University are located in the six counties.

Plaintiffs were not allowed to participate at the agency level. Therefore, their first opportunity to object to the expanded charter was their institution of this lawsuit. Plaintiffs claim that the NCUA's actions should be reversed as contrary to law and as arbitrary and capricious because the six county area is not a "well-defined local community" as that term is defined in the NCUA's regulations.

## STANDARD OF REVIEW

 This court is to conduct a "plenary review of the record." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1576 (10th Cir.1994). Informal agency action, as in this case, will be set aside by a reviewing court if the action "fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Id.* at 1573–74 (citations omitted). "The duty of a court reviewing agency action under the 'arbitrary and capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Id.* at 1574.

 "Because the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, '[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.' " *Id.* at 1575 (citations omitted). "If the agency has failed to provide a reasoned explanation for its action, or if limitations in the administrative record make it impossible to conclude the action was the product of reasoned decisionmaking, the reviewing court may supplement the record or remand the case to the agency for further proceedings." *Id.*

## PETITION FOR JUDICIAL NOTICE

 Pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiffs petition the

court to take judicial notice of facts relating to: (1) the Wasatch Front Regional Council, (2) the Metropolitan Statistical Areas along the Wasatch front established by the Office of Management and Budget ("OMB"), and (3) membership of the Church of Jesus Christ of Latter-day Saints by county in Utah. At oral arguments, Defendants argued that the Federal Rules of Evidence do not apply in this case because the court must treat a review of administrative action as an appeal.

 Defendants are correct that this case must be treated as an appeal. In *Olenhouse*, the district court "processed the ... appeal as a separate and independent action, initiated by a complaint and subjected to discovery and a 'pretrial' motions practice," and then relied on "documents and other evidence outside the administrative record" as a result of "the illicit procedure it employed to determine the issues for review." *Id.* at 1579. The *Olenhouse* court admonished the district court, stating that "[t]his process, at its core, is inconsistent with the standards for judicial review of agency action under the APA." *Id.* "Reviews of agency action in the district courts must be processed *as appeals.*" *Id.* at 1580.

However, under Rule 201(f) of the Federal Rules of Evidence, "[j]udicial notice may be taken at any stage of the proceeding." The Tenth Circuit has construed this language to include the ability to take judicial notice on appeal. *See Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1096 n. 1 (10th Cir.2004); *Bell v. Manspeaker*, 34 Fed.Appx. 637, 641 (10th Cir. April 10, 2002); *Slusher v. Furlong*, 29 Fed. Appx. 490, 493 n. 1, 2002 WL 12252, at \*3 (10th Cir. Jan.4, 2002); *Pueblo of Sandia v. United States*, 50 F.3d 856, 861 n. 6 (10th Cir.1995) (court took judicial notice of government reports and documents not contained in record below). There is ample

authority from the Tenth Circuit that Rule 201(f) is applicable on appeal.

Therefore, this court must determine whether judicial notice would be appropriate under the facts of this case. Rule 201 allows a court to take judicial notice of "adjudicative facts" that are "not subject to reasonable dispute" and that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

 Defendants contend that Plaintiffs are using Rule 201 to circumvent the rule requiring review in administrative appeal cases to be based on the administrative record developed by the agency. Supplementation of the administrative record may only be allowed if the party can establish that: "(1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; or (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong." *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 & n. 1 (10th Cir.2001), *cert denied* 534 U.S. 1127, 122 S.Ct. 1063, 151 L.Ed.2d 967 (2002). Defendants assert that Plaintiffs have not met the standards for supplementation in this case.

Plaintiffs argue that because TFCU did not submit adequate information before the administrative agency, the NCUA based its decision on information that was inaccurate, incomplete, and misleading.

Plaintiffs contend that the materials they seek to include demonstrate that the NCUA ignored relevant factors that should have been considered in the decision making process, the NCUA relied on certain factors without underlying factual support in the record, and the split of the Salt Lake–Ogden MSA occurring after the NCUA's decision demonstrates that the six-county charter encompasses at least two local communities. These are all recognized bases for the admission of materials outside the administrative record. *Custer*, 256 F.3d at 1028. The materials question the rationality of the NCUA decision-making process. For example, Plaintiffs point out that although the membership of the Church of Jesus Christ of Latter-day Saints was relied upon by the NCUA in its determination, there is nothing of substance in the administrative record regarding membership of the Church of Jesus Christ of Latter-day Saints upon which the NCUA could have relied to make such a finding.

Plaintiffs further argue that the materials they seek to introduce meet the standards for judicial notice in that the materials are not controversial or disputed. The court will consider each item separately to determine whether judicial notice is appropriate.

### A. Wasatch Front Regional Council ("WFRC")

■ Plaintiffs ask that judicial notice be taken of the "Wasatch Front Regional Council Unified Planning Work Program for the Ogden–Layton and Salt Lake Urbanized Areas" for fiscal year 2004, dated May 22, 2003 ("Annual Report"). The TFCU application to the NCUA provided only two pages from the WFRC website. Plaintiffs argue this court should take judicial notice of the entire Annual Report because it provides background and de-

tailed information regarding the group's activities. The WFRC Annual Report is produced to provide accurate public information regarding the organization, it is a public document that is freely available, and nothing in the report is subject to dispute or debate.

The NCUA approved TFCU's application by identifying the WFRC as a key political characteristic establishing the six counties as a "well-defined local community." However, other than general references to the WFRC made by TFCU and the NCUA, the only source information in the NCUA administrative record consists of two pages from the WFRC website containing general information. These two pages give no basis for any analysis as to whether the existence of the WFRC supports a conclusion that the six counties constitute a well-defined local community. Without reviewing the entire annual report, the court concludes it will not have the necessary substantive information regarding the WFRC upon which to determine the adequacy of the administrative record or the NCUA process.

### B. Metropolitan Statistical Areas

■ Plaintiffs ask this court to take judicial notice of the OMB Bulletin 03–04 issued June 6, 2003, identifying the three Metropolitan Statistical Areas along the Wasatch Front. The Salt Lake MSA relied upon by the NCUA consisted of three of the six counties-Salt Lake, Weber, and Davis. However, the MSA was changed within weeks of the approval of the expansion application and reconfigured to include Salt Lake, Tooele, and Summit. Under the new configuration, Ogden became its own MSA and includes Davis, Weber, and Morgan counties.

MSA designations are government records and the type of records for which judicial notice is typically taken. The re-

designation of the MSA illustrates that there may have been substantial evidence at the time of the NCUA decision demonstrating that the Salt Lake and Ogden areas represent at least two well-defined local communities. Because the NCUA assumed that an MSA designation supports a finding of a well-defined local community, this court concludes it should take judicial notice of the updated information. In *Custer* the court concluded that the record may be supplemented when evidence comes into existence after the agency acted if it demonstrates the actions were right or wrong. *Custer*, 256 F.3d at 1028. While the evidence of a new MSA would not directly indicate whether a determination was right or wrong, it is clearly relevant and may weigh heavily in a finding that the matter should be remanded to the NCUA for further review.

### C. LDS Church Membership

■ Plaintiffs ask the court to take judicial notice of a Deseret News article, published February 10, 2003, that lists membership of the Church of Jesus Christ of Latter-day Saints in Utah by county. "A court may take judicial notice of facts reported in newspaper articles if the facts are capable of a sufficiently accurate and ready determination." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201.12[2] (2d ed.2004). Plaintiffs represent that they have obtained information from the Church of Jesus Christ of Latter-day Saints regarding county-by-county membership and that, in approximate terms, the information listed in the *Deseret News* article is consistent with the information obtained from the Church of Jesus Christ of Latter-day Saints.

The NCUA did not rely on any documented statistics regarding membership in the Church of Jesus Christ of Latter-day Saints in the six counties and, for comparison, surrounding counties. Instead, the NCUA relied on and accepted representations regarding membership made by TFCU.

The court concludes that judicial notice may be taken of this article. The ownership of the Deseret News by the Church of Jesus Christ of Latter-day Saints supports a finding that the membership statistics in the article would be accurate. Because there are no documented statistics in the administrative record in relation to this factor relied upon as support by the NCUA, the court concludes the record should be supplemented to accurately reflect the membership statistics.

The court concludes that all of the materials Plaintiffs seek to introduce are typical of materials of which a court may properly take judicial notice. The sources are reliable and relevant to the decision-making process employed by the NCUA. The content of the materials are not such that they are in dispute. The fact that the materials may dispute NCUA findings or demonstrate that the decision-making process was flawed does not make them unworthy of judicial notice. Rather, such characteristics make them appropriate for supplementation of the administrative record. Therefore, the court concludes that Plaintiffs have made an adequate showing for supplementation of the record and the taking of judicial notice of these materials. Accordingly, Plaintiff's Petition for Judicial Notice is granted.

### REQUEST TO INVALIDATE AGENCY ACTION

■ Plaintiffs argue that the NCUA's decision allowing TFCU to expand its community field of membership from one to six counties is contrary to law and arbitrary and capricious because the six-county area does not represent a "well-defined

local community" as required by 12 U.S.C. § 1759(b)(3).[1] Based on its argument that the NCUA's decision is contrary to law, Plaintiff's seek a declaratory judgment that this six-county area could never be considered a "well-defined local community." Based on its arguments that the NCUA arbitrarily and capriciously disregarded its own regulations, Plaintiffs seek reversal or remand of the NCUA's decision. The court will first determine whether the NCUA considered the proper factors and properly followed its regulations. If the NCUA failed to consider the proper materials or failed to employ proper procedures in making its determination—both of which would require a remand to the agency for further consideration—it would be inappropriate for this court to rely on such incomplete information or action to make a finding as a matter of law with respect to the six-county area.

The NCUA regulations provide that when the area to be served exceeds the stated population numbers for express approval as is the case with the TFCU application, the application must include documentation to support that the area is a well-defined local community. The regulations provide that "[e]xamples of acceptable documentation may include: The defined political subdivisions; major trade areas; shared/common facilities; organizations and clubs within the community area; newspapers or other periodicals published for and about the area; maps designating the area to be served ...; common characteristics and background of residents; or other documentation that demonstrates that the area is a community where indi-

viduals have common interests and interact." 63 Fed.Reg. 72,038 (1998).

Anyone familiar with the six-county area has an intuitive notion that the expanded community charter covers a large geographic area and population base. The NCUA regulations distinguish between express approvals for smaller community charters and community charters of the size involved in this case. Because the insertion of the term "local" placed new limitations on community charters, the regulations require a more critical analysis of factors for approval of a charter that is large in both geography and population. "[A] larger population in a large geographic area may not meet NCUA community chartering requirements. It is more difficult for ... an area covering multiple counties with significant population to have sufficient interaction and/or common interests, and to therefore demonstrate that these areas meet the requirement of being 'local.'" *Id.* at 72, 037.

The community charter in this case covers six of Utah's most populated counties, includes over 1.4 million residents (almost two-thirds of the State's population), covers land from the Nevada border to the Wyoming border, and crosses two major mountain ranges. The court is mindful of the narrow standard of review in this case and the fact that the NCUA is entitled to deference in the application of its own regulations. The main difficulty the court sees presented by this case, however, is the failure of the NCUA to recognize and critically assess the size of the community it was analyzing as "local," especially given

---

1. The NCUA has since approved the same six-county charter for America First Federal Credit Union, Goldenwest Federal Credit Union, and the University of Utah Federal Credit Union. The NCUA concluded that the approval of the TFCU six-county "community" permitted the NCUA to grant the same community charter to any other credit union. These subsequent applications were approved solely on the basis of the prior approval of the TFCU.

its regulations recognizing that the term "local" was intended to limit such charters.

Because the informal process in front of the NCUA does not allow for input by the public or other entities, the NCUA must have some gatekeeping responsibility to ensure that the "local" requirement is satisfied. It cannot act as a rubber stamp or cheerleader for any application brought before it. This case is troubling because there is no indication in the record that the NCUA questioned any of the data TFCU provided or that the NCUA queried into areas that would diminish the likelihood of finding a "local" community. If the NCUA had conducted a critical analysis of the information provided, it should have recognized areas of concern that required further discussion.

Defendants claim that Plaintiffs' objections to the NCUA's actions consist of disagreements with the NCUA's evaluation of evidence, but that such evaluation was within the NCUA's discretion. However, this court views Plaintiffs' objections as concerns over whether all of the relevant factors were considered, whether factors were considered that had no supporting data, and whether the NCUA's failure to analyze any issue at odds with the approval of the application rendered the decision arbitrary and capricious. Under controlling case law, each of these objections could be grounds for reversal or remand. Therefore, if this court agrees with Plaintiffs' objections, this court may properly remand the matter to the NCUA for further review.

Defendants also argue that Plaintiffs improperly attack each of the bases relied upon by the NCUA rather than the conclusion as a whole. But the NCUA's conclusion is not a sum of its parts. This court finds no support in the record for the expanded community charter under the political subdivisions prong. To the extent that the NCUA addresses the political subdivisions factor, it seems to rely on the OMB's MSA for Salt Lake, Davis, and Weber counties and the WFRC. However, neither the MSA nor the WFRC encompass all six counties. The NCUA never addresses the fact that there is no common political subdivision in Utah, except the state itself, that is expansive enough to include all six counties. Moreover, there is no commonality between these six counties with respect to school districts or any other special service districts. Furthermore, and perhaps more significantly, the NCUA did not address or analyze the fact that there are multiple political jurisdictions and taxing authorities within the six-county area. These facts diminish the likelihood that the area is local but, as is the case with any information that is not favorable to a finding that the community is local, the NCUA did not address or analyze it.

The joint MSA that included Salt Lake, Davis and Weber counties did not include three of the counties involved in the application-Tooele, Summit, and Morgan. There appears to be little or no basis for relying upon an MSA to define a local community when that MSA did not include Tooele county, the original county of TFCU's community charter. In effect, the expanded charter includes an expansion from a county in one MSA to include another full MSA plus additional counties in potentially yet another MSA. The NCUA does not appear to question or analyze the fact that the MSA does not parallel the area of the requested charter. Rather it is simply referred to as a supporting factor without any critical discussion. The MSA, itself, recognizes that there were two urbanized areas-Salt Lake and Ogden. It therefore should have given the NCUA an indication that each of those areas may be

its own local community and that an analysis of the issue was necessary.

Shortly after the application was approved, the OMB changed the MSA county designations and created an MSA for Ogden that includes Weber, Davis, and Morgan counties and an MSA for Salt Lake City that includes Salt Lake, Tooele, and Summit counties. This court has already determined that the new MSA configurations can supplement the record. At present, the TFCU has a community charter that spans two full MSAs. The new MSA designations provide evidence that this court concludes may have changed the NCUA's determination. Therefore, the court concludes the NCUA should have an opportunity to reconsider the TFCU application with the value of the new MSA designations.

The WFRC, which covers five of the six counties in the expanded charter, is the entity that comes the closest to encompassing all six counties. However, the NCUA's understanding of the WFRC's role, based on only two pages of the WFRC website, is questionable given the statements at the hearing indicating that the NCUA may have viewed the WFRC as a development district. The WFRC was created to be and serves as a Metropolitan Planning Organization ("MPO") under federal law for the transportation corridor running through Salt Lake, Davis, and Weber counties. The designation of an MPO for each urbanized area is a prerequisite to receiving certain federal highway funding. Significantly, the WFRC has been designated as the MPO for the two urbanized areas covering the Ogden–Layton Urbanized Area and the Salt Lake Urbanized Area. Again, if the NCUA had considered the complete information regarding the nature and role of the WFRC, it would have discovered that an issue existed as to the possibility that the Ogden area is a community separate and distinct from Salt Lake. Although Defendants argue that the WFRC deals with issues in addition to transportation, the court concludes that its full nature and role was not adequately conveyed to the NCUA and the NCUA should be allowed to reconsider whether the organization actually supports a finding that the county members of the WFRC, plus Summit county, are a part of only one local community.

The NCUA's decision also relied substantially on Salt Lake City's prominence as a major trade area in determining that the six-county area was one local community. The NCUA found that there is a geographic isolation that exists and all trade in the area focuses on Salt Lake City. The TFCU application creates a false impression of geographic isolation. The six counties present only a portion of the Wasatch front. Salt Lake City has statewide importance, and, in some instances, regional importance. However, the NCUA's decision contains no recognition of the economic and social importance of Ogden. Significantly, there is no analysis of whether and to what extent Ogden is a major trade area sufficient to create its own local community. Ogden has its own daily newspaper, hospital, events center, university, school districts, service districts, and major retail districts. The complete omission of its significance demonstrates either a failure in the materials provided by TFCU or a failure in the NCUA's analysis.

Defendants argue that the majority of retail business outlets in the community are located in the greater Salt Lake City metropolitan area and community residents are drawn to Salt Lake City because of its concentration of retail businesses. However, Defendants have not provided concrete data to support this argument and the commuting data does not support

it. The commuting data actually shows an equal amount of commuting from Davis County to Salt Lake and Weber County. In addition, the data shows a significant amount of commuting from Morgan County to Weber and Davis counties and almost no commuting to Salt Lake County. The NCUA's cursory reliance on Salt Lake as the only major trade area for the six-county area fails to critically discuss the existence of Ogden as another trade area.

Defendants argue that the most significant evidence of a well-defined local community is that the residents have common interests and interact. Defendants then contend that there is no requirement that there be commonality and shared interest among all six counties. According to Defendants, the fact that each county has ties to Salt Lake City is enough-for example, there is no requirement that Morgan county have ties to Tooele County. Based on this reasoning, even if there were no common interests or interaction between Tooele County and Morgan County and TFCU could not establish a community charter if it sought to expand only into Morgan County, it could expand into Morgan County if it includes four other counties. This type of reasoning directly contradicts the insertion of the term "local" in the regulations. Rather than limiting community charters, such an argument favors an expansion of community charters. Because this court has concluded that Salt Lake's prominence does not negate Ogden's potential to support a separate local community, there needs to be some analysis regarding the interaction between the counties. If Morgan county is more closely tied to Ogden than Salt Lake City, the issue of interaction between Tooele county and Morgan county would be a fact significant in a determination of one local community. Therefore, the court concludes that the lack of information and analysis with respect to each county's interaction

and ties to Tooele County provide an additional ground for remand to the NCUA for further findings. If TFCU cannot establish that it has ties and interaction with another county it seeks to expand into or that there are similar interaction patterns within the six-county area, the NCUA should critically analyze whether such factors diminish the likelihood that one local community exists.

The NCUA further relied on membership in the Church of Jesus Christ of Latter-day Saints as a factor supporting common interest and interaction within the six-county area. Defendants argue that the Church of Jesus Christ of Latter-day Saints is significant in establishing a connection and commonality between the six counties. Defendants represent that residents of these counties interact at weekly worship services as well as meetings of church auxiliary organizations. However, Plaintiffs argue that such interaction occurs on a neighborhood basis. And, the court can take judicial notice of the fact that members of the Church of Jesus Christ of Latter-day Saints meet together on a weekly basis on a neighborhood level. TFCU's representations that there was weekly interaction among a six-county area was misleading to or misunderstood by the NCUA. Although the membership of the Church of Jesus Christ of Latter-day Saints is a common thread among all counties in the State of Utah, the NCUA had no statistics regarding memberships before it when it made its determination. Based on the Deseret News article submitted to this court, the counties in the six-county area include counties with some of the highest percentages of membership as well as some of the counties with the lowest percentages of membership. Because the NCUA relied on membership in the Church of Jesus Christ of Latter-day Saints without any underlying information

or statistical data, the court must conclude that there was no evidence in the record before the NCUA to support its finding.

There is little or no evidence of interaction between the entire six-county area in relation to the examples expressly identified in the NCUA regulations. There are no shared service districts between Salt Lake and Ogden. No school district or water district spans the two areas. Although the *Salt Lake Tribune* and *Deseret News* newspapers circulate statewide, Ogden has its own widely circulating daily newspaper and Park City has a widely circulating bi-weekly newspaper. The NCUA made no mention of these facts. Defendants also fail to mention Ogden as a significant trade area, its retail establishments, its regional medical center, and the distinctive and geographically separate nature of the regional universities. The NCUA's reliance on the fact that there are two state universities in the area seems misplaced. The existence of two major state universities within one community should have raised an issue with respect to whether there are shared facilities or organizations. The statistics show little interaction between the counties based on the two universities and show a much higher likelihood that each university serves a separate local community. Because the NCUA decision completely fails to discuss whether Ogden is its own local community, the court concludes the case should be remanded for such an analysis.

Plaintiffs claim there is a recurring defect in TFCU's application and the NCUA's decision because the definition of a "well-defined local community" inherently recognizes that the community has distinctive characteristics in contrast with the surrounding geographic areas. The court recognizes that most of the factors supporting the NCUA's decision would apply to the entire state. There is also an at-tractiveness to the notion that "well-defined" would require some sort of distinctive characteristics other than mere county lines. However, Defendants reply that there is no requirement that an applicant must apply for a charter for a larger area than it may wish to expand into or be capable of serving merely because common characteristics apply to the larger area as well. In this case, there is a real concern that based on the type of analysis and factors relied upon by the NCUA to find one local community in the six-county area whether there would be any reason to limit the finding of a local community within the entire state in some future application for expansion. However, that issue is not before the court. The court concludes that while there may be some dispute as to distinctiveness, which the court views as more a question of whether the community is well-defined, the main issue presented in this case is whether the community is "local." Therefore, the court makes no finding as to whether the NCUA must find distinctive characteristics in its finding of a "well-defined local community."

Based on the record before it, this court cannot conclude that the NCUA examined the relevant data and articulated a rational connection between the facts found and the decision made. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir.1994). The failure of the NCUA to address the existence of any undisputed factors demonstrating the absence of a "local" community make it impossible to conclude the action was the product of reasoned decisionmaking. Even affording the NCUA discretion in the interpretation of its own regulations, this matter must be remanded for further analysis on the issue of whether the six-county area constitutes a "local" community within the parameters of the NCUA regulations. The word local was intended to be a limiting factor, but there is no indication in the record that the

NCUA analyzed any issue that may have tended to diminish the likelihood of finding more than one local community in the six-county area. This is contrary to the statute and NCUA regulations implementing the recent amendments. As the only entity involved in the process at the agency level, the NCUA must critically analyze the facts provided in the application to ensure that incomplete and erroneous information does not lead to an improper conclusion. Therefore, this court remands this matter to the NCUA for further proceedings consistent with this Order.

## CONCLUSION

Based on the above reasoning, the court GRANTS Plaintiffs' Petition for Judicial Notice and Plaintiffs' Request for Invalidation of Agency Action. This matter is remanded to the NCUA for further proceedings consistent with this Order.