**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STANDING AKIMBO, LLC, a Colorado
limited liability company; PETER
HERMES, an individual; KEVIN
DESILET, an individual; SAMANTHA
MURPHY, an individual; JOHN
MURPHY, an individual,

     Petitioners - Appellants,

v.

UNITED STATES OF AMERICA,
through its agency the Internal Revenue
Service,

     Respondent - Appellee.

No. 19-1049

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-MC-00169-WJM-KLM)**
_____

James D. Thorburn (Richard A. Walker with him on the briefs), of Thorburn Walker,
LLC, Greenwood Village, Colorado, for Petitioners-Appellants.

Nathaniel S. Pollock, Attorney, Tax Division (Richard E. Zuckerman, Principal Deputy
Assistant Attorney General; Travis A. Greaves, Deputy Assistant Attorney General;
Gilbert S. Rothenberg and Michael J. Haungs, Attorneys, Tax Division; Jason R. Dunn,
United States Attorney, Denver, Colorado, of Counsel, with him on the brief),
Department of Justice, Washington, D.C., for Respondent-Appellee.
_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.

_____

The Internal Revenue Service (IRS) is responsible to enforce the federal tax code against marijuana businesses operating legally under state law. This led to a civil audit of Peter Hermes, Kevin Desilet, Samantha Murphy, and John Murphy (collectively, the "Taxpayers") to verify their tax liabilities for their medical-marijuana dispensary, Standing Akimbo, LLC. The IRS was investigating whether the Taxpayers had taken improper deductions for business expenses arising from a "trade or business" that "consists of trafficking in controlled substances." 26 U.S.C. § 280E. But claiming to fear criminal prosecution, the Taxpayers declined to provide the audit information to the IRS. This left the IRS to seek the information elsewhere—it issued four summonses for plant reports, gross-sales reports and license information to the Colorado Department of Revenue's Marijuana Enforcement Division (the "Enforcement Division"), which is the state entity responsible for regulating licensed marijuana sales.

In Colorado federal district court, the Taxpayers filed a petition to quash the summonses. The government moved to dismiss the petition and to enforce the summonses. The district court granted the motion to dismiss and ordered the summonses enforced. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# BACKGROUND

## I.     The Audit

The Taxpayers own Standing Akimbo, and Samantha Murphy is its business manager.[1] Standing Akimbo is a Colorado Limited Liability Company operating a medical-marijuana dispensary in Denver, Colorado. Though such dispensaries are legal under Colorado law, *see* Colo. Rev. Stat. Ann. § 44-10-102 (West 2020), "marijuana is still classified as a federal 'controlled substance' under schedule I of the [Controlled Substances Act (CSA)]," *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017) (citations omitted), *cert. denied*, 138 S. Ct. 1281 (2018); *see also* 21 U.S.C. §§ 812 (listing marijuana as a Schedule I controlled substance), 841 (prohibiting distribution of a controlled substance). This federal classification has federal tax consequences for marijuana dispensaries, such as § 280E's prohibition on their deducting business expenses. *See* 26 U.S.C. § 280E.

In May 2017, the IRS began investigating whether Standing Akimbo had claimed business deductions prohibited by § 280E. That month, IRS Revenue Agent Tyler Pringle provided Standing Akimbo written notice (in a letter) that the IRS was auditing its return for the 2014 tax year. In the letter, Agent Pringle asked that Standing Akimbo call him to discuss the items and documents he intended to request. Agent Pringle enclosed a copy of Publication 1, which outlines the IRS's audit

---

[1] The magistrate judge noted in her recommendation to the district judge that the Taxpayers are "believed to be the owners of Standing Akimbo, although none admit ownership in their Petition." App. vol. 2 at 74.

procedures. Under a section titled "Potential Third Party Contacts," this publication notes that the IRS may "sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received." Internal Revenue Serv., Dep't of the Treasury, Catalog No. 64731W, Publication 1: Your Rights as a Taxpayer (Rev. 9-2017), https://www.irs.gov/pub/irs-pdf/p1.pdf.[2] In a second letter, this one in June 2017, Agent Pringle notified Standing Akimbo that the IRS had expanded the audit to include its return for the 2015 tax year, because it raised the same issues as the 2014 return.

Because Standing Akimbo is a pass-through entity,[3] its audit would necessarily affect its owners' tax returns. So Agent Pringle also sent letters, with Publication 1 attached, to Hermes and the Murphys, notifying them that the IRS would be examining their personal-income-tax returns for the 2014 and 2015 tax years. Agent Pringle had already notified Desilet that the IRS was examining his personal-income-tax liabilities for 2014, 2015, and 2016 because it had no record of his filing returns for these years.

---

[2] On appeal, the parties have not provided a copy of this publication, but we may take judicial notice of official government publications. *See High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 n.1 (10th Cir. 2019) (citing *Pueblo of Sandia v. United States*, 50 F.3d 856, 861 n.6 (10th Cir. 1995); Fed. R. Evid. 201(b)(2)).

[3] For a pass-through entity, profits "pass through" the business to the owners and are taxed under the individual-income tax; pass-through entities are not subject to corporate-income tax. *See What Are Pass-Through Businesses*, Tax Pol'y Ctr., https://www.taxpolicycenter.org/briefing-book/what-are-pass-through-businesses (last visited Feb. 6, 2020).

As part of the examinations, Agent Pringle sent the Taxpayers an Information Document Request relating to the 2014 tax year. The Document Request sought, among other things, a list of licenses held by Standing Akimbo and the Taxpayers, as well as some specific reports from the Enforcement Division's Marijuana Enforcement Tracking Reporting Compliance ("METRC") system: the annual gross-sales report, transfer report, annual harvest report, and monthly-plant-inventory reports. A month later, after receiving no response, Agent Pringle issued a second Document Request requesting the same information. Then, when the IRS expanded the audit to include the 2015 tax year, Agent Pringle issued a third Document Request requesting this same information for 2015.

The Taxpayers only partially responded to these Document Requests and did not provide enough information to substantiate their returns. For example, the Taxpayers provided none of the requested METRC reports. They claimed that Agent Pringle was in fact investigating federal drug crimes and declined to provide potentially incriminating evidence without receiving immunity from prosecution.

The information the Taxpayers did provide was so minimal and incomplete that Agent Pringle could not verify the accuracy of their returns. Accordingly, Agent Pringle used other means to assist him in evaluating the returns: he issued four third-party summonses to the Enforcement Division. One summons regarded Standing Akimbo and requested a list of the licenses it had held from 2014 through 2015, as well as its METRC annual gross-sales reports, transfer reports, annual harvest reports, and monthly plant-inventory reports for 2014 and 2015 (the "Standing

5

Akimbo summons"). The other three summonses regarded the Taxpayers—one each for Hermes, Desilet, and the Murphys—requesting a list of the licenses they had held in 2014 and 2015 (collectively, the "Taxpayers summonses"). Agent Pringle provided the Taxpayers copies of all the summonses, along with an explanation of their right to petition to quash the summonses.

## II.     The Resulting Litigation

In Colorado federal district court, the Taxpayers filed a petition to quash the summonses. They asserted that none of the summonses satisfied the Supreme Court's requirements for enforcement as announced in *United States v. Powell*, 379 U.S. 48 (1964). Specifically, the Taxpayers argued that the summonses lack a legitimate purpose, are deficient because the IRS failed to follow necessary administrative steps, exceed the IRS's authority by forcing the Enforcement Division to create reports, and impermissibly seek the identity of third-party taxpayers. The Taxpayers also requested an evidentiary hearing to determine whether the summonses satisfied the *Powell* requirements.

The government moved to dismiss the petition under Federal Rule of Civil Procedure 12(b)(6) and to enforce the summonses under 26 U.S.C. §§ 7604(a) and 7609(b)(2)(A), arguing that Agent Pringle's appended declaration established that the summonses satisfied *Powell*'s requirements. The Taxpayers responded by reasserting their initial grounds for quashing the summonses and listing six more: (1) Congress has not authorized the IRS to investigate drug crimes, (2) the IRS must grant absolute immunity before collecting nontax-crime information for tax purposes, (3) the

6

summonses violate the Taxpayers' Fourth Amendment privacy rights, (4) the summonses are overbroad, (5) the IRS's investigation into nontax crimes violates *Powell*'s good-faith requirement, and (6) enforcing the summonses would compel a violation of Colorado law. The Taxpayers also noted that they "are fully asserting Fifth Amendment privilege" in light of the IRS's supposed admission that the audit is "an investigation of whether the [T]axpayers violated federal criminal drug laws[.]" App. vol. 1 at 118. Finally, they argued that because the motion to dismiss relies on information outside the pleadings, the district court must convert it into a motion for summary judgment.

The district judge referred the matter to a magistrate judge. The magistrate judge did not convert the motion to dismiss into a motion for summary judgment, but she still relied on Agent Pringle's declaration in concluding that the IRS had met *Powell*'s requirements. In addition, of course, the magistrate judge had available before her the Taxpayers' attachments to their response to the motion to dismiss. The magistrate judge concluded that the Taxpayers had not sufficiently supported their arguments against enforcement. So the magistrate judge recommended denying the petition to quash, granting the motion to dismiss, and enforcing the summonses. The magistrate judge also informed the parties of their right to object to the recommendation and warned that failing to object would waive de novo review by the district judge and would waive appellate review.

The Taxpayers timely objected to eight of the magistrate judge's rulings: (1) that the IRS had issued the summonses for a legitimate purpose, (2) that the

7

information summoned is relevant to that purpose, (3) that the IRS does not already possess the information summoned, (4) that the potential for criminal prosecution does not show any bad faith by the IRS, (5) that enforcement would not improperly compel document creation, (6) that the Fourth Amendment does not protect the information summoned, (7) that the summonses are not overbroad, and (8) that enforcement would not compel a violation of state law. But the district judge overruled the objections and fully adopted the recommendation. After considering these arguments, the district judge denied the petition to quash, granted the motion to dismiss, and enforced the summonses. The Taxpayers have timely appealed the magistrate judge's recommendation and the district judge's order.

## DISCUSSION

This case is grounded in the IRS's statutory power to issue summonses to assess taxes. We first provide an overview of this power and the framework that courts follow when asked to enforce such a summons. Then we turn to our standard of review. Finally, we address the Taxpayers' three main arguments why we should reverse and remand either for discovery or an evidentiary hearing.

First, the Taxpayers argue that the district court applied the wrong standard of review by not converting the motion to dismiss into a motion for summary judgment. Second, they assert that the district court misapplied *Powell*. Third, they argue that they created an issue of fact regarding the IRS's lack of good faith or its abuse of the court's process in enforcing the summonses. We address each argument in turn and conclude that the Taxpayers fail at each step. We affirm.

## I. The IRS's Summons Power

Congress authorizes and requires the IRS "to make the inquiries, determinations, and assessments of all taxes . . . imposed by" the Internal Revenue Code (title 26 of the U.S. Code). 26 U.S.C. § 6201(a). As part of this authority, Congress empowered the IRS with "broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability.'" *United States v. Clarke*, 573 U.S. 248, 250 (2014) (alteration in original) (quoting 26 U.S.C. § 7602(a)). The IRS has authority to issue summonses to the subject taxpayer and to third parties who may have relevant information. *See* 26 U.S.C. § 7602(a)(2); *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1181 (10th Cir. 2019).

But the IRS has limits on its ability to issue and enforce third-party summonses. For example, the IRS must provide the taxpayer with notice of such a summons, and the taxpayer may intervene in any enforcement proceeding. *See* 26 U.S.C. § 7609(a)–(b). The taxpayer also has the right to petition a district court to quash the third-party summons. *Id.* § 7609(b). The federal "district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine [such] proceeding . . . [and a]n order denying the petition shall be deemed a final order which may be appealed." *Id.* § 7609(h)(1). In that same proceeding, the IRS may counterclaim to enforce the summons, and the district court's decision will bind the third party "whether or not the person

9

intervenes in such proceeding[.]" *Id.* § 7609(b)(2)(A), (C). Such proceedings "should be summary in nature and discovery should be limited." *High Desert*, 917 F.3d at 1181 (quoting *United States v. Stuart*, 489 U.S. 353, 369 (1989)) (internal quotation marks omitted).

Courts operate under a familiar framework during such proceedings. *See id.* at 1181–82 (quoting *Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 345 (1st Cir. 2009)). "As a threshold matter, the IRS must first show that it has not made a referral of the taxpayer's case to the Department of Justice ('DOJ') for criminal prosecution." *Id.* at 1182 (citing *Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987)); *see also United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 311–13 (1978). Then "the IRS 'need only demonstrate good faith in issuing the summons[,]' . . . [which] means establishing what have become known as the *Powell* factors[.]" *Clarke*, 573 U.S. at 250 (quoting *Stuart*, 489 U.S. at 359). *Powell* requires that the IRS establish: (1) "that the investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the [IRS's] possession," and (4) "that the administrative steps required by the [Internal Revenue] Code have been followed." 379 U.S. at 57–58.

The IRS's burden on these factors is slight "because the statute must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted." *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985) (citing *United States v. Kis*, 658 F.2d 526, 536 (7th Cir. 1981)). The IRS generally

meets this burden with an affidavit of the agent who issued the summons. *See id.*

(quoting *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979);

and citing *Kis*, 658 F.2d at 537). The burden then shifts to the taxpayer to factually

refute the *Powell* showing or factually support an affirmative defense—conclusory

allegations are insufficient. *See id.* at 1444 (quoting *Garden State*, 607 F.2d at 71).

This is a heavy burden. *Id.* (citing *Garden State*, 607 F.2d at 68). If the taxpayer

cannot meet this burden, "the district court should dispose of the proceeding on the

papers before it and without an evidentiary hearing"—a hearing may be granted only

if the burden is met. *Id.* at 1444 & n.2 (quoting *Garden State*, 607 F.2d at 71)

(internal quotation marks omitted). Further, limited discovery is available "only in

extraordinary situations" for "those defenses where . . . the taxpayer must rely on

information peculiarly within the knowledge or files of the Service." *Id.* at 1445

(citations and internal quotation marks omitted). "Because 'the burden of showing an

abuse of the Court's process is on the taxpayer, it is . . . clear that the taxpayer must

make a substantial preliminary showing before even limited discovery need be

ordered.'" *Id.* (quoting *United States v. Morgan Guar. Tr. Co.*, 572 F.2d 36, 42–43

n.9 (2d Cir. 1978)).

## II.     Standard of Review

We review for an abuse of discretion the district court's denial of the

Taxpayers' petition to quash. *See High Desert*, 917 F.3d at 1179 (citing *Jewell v.*

*United States*, 749 F.3d 1295, 1297 (10th Cir. 2014)). Committing an error of law

constitutes an abuse of discretion. *See id.* (quoting *Wyandotte Nation v. Sebelius*, 443

11

F.3d 1247, 1252 (10th Cir. 2006)). And because the district court's decision on the petition turned on issues of law, we review de novo. We also review de novo the district court's grant of the IRS's motion to dismiss the petition and to enforce the summonses.[4] *See id.* (citing *Jewell*, 749 F.3d at 1297).

In determining whether the IRS met *Powell*'s requirements, we must consider something outside the pleadings (i.e., Agent Pringle's declaration). Because we are considering Agent Pringle's declaration, the IRS's motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The district court correctly applied the *Powell* framework but erred by considering Agent Pringle's declaration without converting the motion to dismiss to a motion for summary judgment. But we will not reverse or remand on this error, because "we may affirm on any basis that the record adequately supports."[5] *High Desert*, 917 F.3d at 1181 (citing *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 879 (10th Cir. 2017); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006)). And the record supports the government's position under the summary-judgment standard.

---

[4] Though we have, at times, reviewed a district court's decision to enforce a summons for clear error, we review de novo here because the district court made no factual findings and its ruling rested solely on legal issues. *See, e.g.*, *High Desert*, 917 F.3d at 1179 n.4.

[5] So, while we agree with the Taxpayers that the district court applied the wrong standard of review, we do not grant them relief. Further, they waived appellate review of this argument by failing to raise it in their objections to the magistrate judge's recommendation. *See, e.g.*, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999).

Thus, we will apply our traditional Rule 56 summary-judgment standard in assessing this case. *See id.* In so doing, "we will view the record in the light most favorable to [the Taxpayers] and ask whether the IRS has shown that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Id.* (citing *Jewell*, 749 F.3d at 1297). Because "'[t]he substantive law at issue determines which facts are material in a given case[,]' . . . the substantive rubric that the Supreme Court defined in *Powell* is of central importance in our determination of whether there are genuine disputes of material fact here." *Id.* (first alteration in original) (citations omitted) (quoting *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998)). Notably, our traditional summary-judgment standard of review precludes the Taxpayers from resting on conclusory statements because "such statements 'do not suffice to create a genuine issue of material fact.'" *Id.* (quoting *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998)).

## III.    The Summonses Satisfy *Powell*.

We now must determine whether the IRS proffered sufficient evidence to pass the no-DOJ-referral threshold and to establish the four *Powell* factors. We address each factor in turn and consider whether the Taxpayers have provided evidence to establish a genuine issue of material fact. We conclude that the government's evidence passes the no-DOJ-referral threshold and satisfies its *Powell* burden and that the Taxpayers have failed to rebut it.

13

### A. The IRS Has Not Referred the Taxpayers' Case to the DOJ for Criminal Prosecution.

The threshold question is whether the IRS has referred the Taxpayers' case to the DOJ for criminal prosecution. *See, e.g.*, *High Desert*, 917 F.3d at 1183. The IRS easily meets this slight burden with Agent Pringle's declaration. Agent Pringle declared under penalty of perjury that "[n]o Department of Justice referral, as defined by 26 U.S.C. § 7602(d), is in effect with respect to Standing Akimbo, LLC, . . . Peter Hermes, John Murphy, Samantha Murphy, or Kevin Desilet for the tax periods under examination." App. vol. 1 at 74–75 (Decl. of Agent Tyler Pringle, dated Dec. 19, 2017). "Such an 'affidavit of the agent who issued the summons and who is seeking enforcement' is sufficient to make '[t]he requisite showing.'" *High Desert*, 917 F.3d at 1184 (second alteration in original) (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1443). The Taxpayers do not contest that this threshold matter has been met.[6]

### B. The IRS Is Conducting the Investigation for a Legitimate Purpose.

Next, we reach *Powell*'s first factor: whether "the investigation will be conducted pursuant to a legitimate purpose." 379 U.S. at 57. Agent Pringle's declaration again satisfies the IRS's slight burden on this factor. Agent Pringle declared: "The IRS has assigned me to conduct an examination of the federal tax liabilities of Standing Akimbo, LLC, for the 2014 and 2015 tax years." App. vol. 1 at

---

[6] In its motion to dismiss, the government acknowledged that it bears the burden of establishing this matter, arguing that it did so through Agent Pringle's declaration. The Taxpayers did not respond to this contention in their response, and the magistrate judge's recommendation did not address it.

71. He also stated that, because Standing Akimbo's audit would affect its owners' tax returns, he opened examinations into the personal-income-tax returns of Desilet, the Murphys, and Hermes. He explained that, because the Taxpayers did not adequately respond to his Document Requests, he issued the third-party summonses to obtain the needed information to "verify the accuracy of Standing Akimbo's internal books and records and to determine whether what Standing Akimbo reported on its returns is consistent with that information." *Id.* at 73. As we will discuss in the next section concerning *Powell*'s second factor, the information summoned is relevant in determining whether the Taxpayers violated § 280E by taking improper deductions. Agent Pringle's declaration sufficiently establishes that the IRS acted with a legitimate purpose. *See High Desert*, 917 F.3d at 1184 (explaining that the agent's affidavit meets IRS's slight burden).

In response, the Taxpayers argue that the IRS acted with an illegitimate purpose, namely, investigating federal drug crimes. We have already rejected this argument. In 2017, we observed that "the IRS's obligation to determine whether and when to deny deductions under § 280E[] falls squarely within its authority under the Tax Code." *Green Sol. Retail*, 855 F.3d at 1121 (citing 26 U.S.C. §§ 6201(a), 7602(a); *Clarke*, 573 U.S. at 249). The next year we held that "it is within the IRS's statutory authority to determine, as a matter of civil tax law, whether taxpayers have trafficked in controlled substances." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1197 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2745 (2019). Most recently, in *High Desert*, we relied on *Green Solution* and *Alpenglow* to hold that the

IRS has statutory authority to "mak[e] a determination that Congress expressly asked it to make—even if that determination requires the IRS to ascertain whether the taxpayer is engaged in conduct that could subject him or her to criminal liability under the CSA." *High Desert*, 917 F.3d at 1187. So, even if the IRS had in fact issued the summonses to investigate federal drug crimes (and the Taxpayers have furnished no evidence in support of that), the IRS could still do so as part of determining § 280E's applicability. *See id.* ("Congress 'granted the [IRS] broad latitude to issue summonses "[f]or the purpose of . . . determining the liability of any person for *any* internal revenue tax."'" (alterations in original) (quoting *Clarke*, 573 U.S. at 250)).[7]

The Taxpayers posit that they are not violating the CSA, because the CSA does not cover Colorado's legal marijuana. First, the Taxpayers' requests for immunity from prosecution for federal drug crimes contradict this argument. Second, this argument is unavailing. The CSA does not have to preempt Colorado law for

---

[7] In a Federal Rule of Appellate Procedure 28(j) letter, the Taxpayers argue against § 280E's constitutionality by relying on one partial dissent (joined by two other panelists) in an en banc United States Tax Court decision. The dissent opined that Congress had exceeded its Sixteenth Amendment authority in enacting § 280E. *See N. Cal. Small Bus. Assistants Inc. v. Comm'r*, 153 T.C. No. 4, 2019 WL 5423724, at *12 (2019) (Gustafson, J., concurring in part and dissenting in part). We are unpersuaded by this dissent. We agree with the majority, which ruled that § 280E falls within Congress's authority under the Sixteenth Amendment to establish deductions. *See id.* at *4 (majority opinion). Further, we are bound by our decisions in *Green Solution*, *Alpenglow*, and *High Desert* that the IRS is properly enforcing § 280E. *See, e.g.*, *Robles-Garcia v. Barr*, 944 F.3d 1280, 1284 (10th Cir. 2019) ("We are bound by our prior Tenth Circuit precedent." (citing *Lucio-Rayos v. Sessions*, 875 F.3d 573, 582 (10th Cir. 2017))).

§ 280E to apply. Section 280E applies when a business's activities "consist[] of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law *or* the law of any State in which such trade or business is conducted." 26 U.S.C. § 280E (emphasis added). Congress's use of "or" extends the statute to situations in which federal law prohibits the conduct *even if* state law allows it.

Further, the CSA reigns supreme. *See Gonzales v. Raich*, 545 U.S. 1, 29 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail. It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants . . . ." (citation and internal quotation marks omitted)). "[S]tate legalization of marijuana cannot overcome federal law." *Feinberg v. Comm'r*, 916 F.3d 1330, 1338 n.3 (10th Cir. 2019) (citing *Hancock v. Train*, 426 U.S. 167, 178 (1976)); *see also Gonzales*, 545 U.S. at 19 ("[A] primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets."). So, despite legally operating under Colorado law, "the Taxpayers are subject to greater federal tax liability" because of their federally unlawful activities, and any "remedy [for this] must come from Congressional change

17

to § 280E or 21 U.S.C. § 812(c) (Schedule I) rather than from the courts." *Feinberg*, 916 F.3d at 1338 n.3.[8]

The Taxpayers thus fail to create a genuine issue of material fact regarding whether the IRS has a legitimate purpose to investigate them.[9] We agree with the district court that the IRS satisfied this factor.

### C. The IRS's Summonses Seek Information Relevant to Its Legitimate, Investigatory Purpose.

The second *Powell* factor requires the IRS to establish that "the inquiry may be relevant to the [investigation's] purpose." 379 U.S. at 57. Agent Pringle explained that the Standing Akimbo summons sought METRC data "account[ing] for all marijuana plants and products" and that this information "can establish whether a marijuana business properly reported its gross receipts and allowed deductions for

---

[8] The Taxpayers filed a Rule 28(j) letter making a new statutory-interpretation argument regarding § 280E's applicability to state-legal marijuana sales. The Taxpayers have waived this argument by waiting to raise it in a Rule 28(j) letter. *See, e.g.*, *Flores-Molina v. Sessions*, 850 F.3d 1150, 1172 n.16 (10th Cir. 2017) (stating that we will not consider an argument raised for the first time in a Rule 28(j) letter). We decline to excuse this waiver because the argument rests on the above-rejected premise that § 280E may apply to the Taxpayers only if their legal sale of marijuana under Colorado law violates federal law. Further, the letter falls outside Rule 28(j). *See Feinberg*, 916 F.3d at 1337 n.2 ("A rule 28(j) letter's purpose is 'not to interject a long available but previously unmentioned issue for decision.'" (quoting *Niemi v. Lasshofer*, 728 F.3d 1252, 1262 (10th Cir. 2013))).

[9] The Taxpayers have filed two Rule 28(j) letters attempting to raise new arguments contesting the IRS's legitimate purpose in issuing the summonses. Both letters selectively quote and misconstrue documents to assert that the IRS's "true purpose" is to disrupt and dismantle the state-legal marijuana industry. Taxpayers' Second Nov. 13, 2019 28(j) Letter at 2, ECF No. 10694735. These arguments are waived because they were improperly raised for the first time in Rule 28(j) letters. *See, e.g.*, *Feinberg*, 916 F.3d at 1337 n.2; *Flores-Molina*, 850 F.3d at 1172 n.16.

cost of goods sold." App. vol. 1 at 72–73. According to Agent Pringle, he issued the Taxpayers summonses seeking a list of the Taxpayers' licenses "to verify that these individuals own Standing Akimbo" and to "determine the correctness of the[ir] federal tax returns and federal tax liabilities." *Id.* at 74–75. With this explanation, Agent Pringle's declaration satisfies the IRS's slight burden to establish that the information summoned may be relevant to its federal tax investigation into whether the Taxpayers had improperly deducted business expenses.

On appeal, the Taxpayers respond with one contention: that the requested METRC data is irrelevant to the IRS's legitimate purpose because that data tracks only marijuana plants, information relevant only to a federal-drug-crime investigation. To support this conclusory assertion, the Taxpayers provide a heavily redacted document purporting to be an IRS purchase lead sheet, which states: "METRC data does not track purchases other than tracking the amount of marijuana product transferred in, this report only tracks the amounts, not the costs; therefore, there are no verification in METRC's to support any [cost of goods sold]." App. vol. 2 at 150. But the Taxpayers cannot use this document to create a material issue of fact. First, the Taxpayers have waived this argument by not raising it until objecting to the magistrate judge's recommendation. *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011) (stating that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived" (alteration in original) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)) (internal quotation marks omitted)). Though the Taxpayers had earlier

19

contended that the Standing Akimbo summons would not provide financial data, but instead only marijuana-plant information, they did not object on relevancy grounds until their objections to the magistrate judge's recommendation.

Second, even if we excused that waiver, the redacted document would be inadmissible hearsay. The Taxpayers rely on it for the truth of the matter asserted—that METRC does not provide cost-of-goods-sold information—without providing the foundation necessary to show the document meets an exception or exclusion to the hearsay rule. Evidence must be admissible at trial before it can create a genuine issue of material fact for summary judgment purposes. *See, e.g.*, *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." (citation omitted)); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." (citations omitted)).

And even if we could consider this evidence,[10] it would not create a genuine issue of material fact. The IRS has authority to summon information "of even *potential* relevance to an ongoing investigation." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). Even assuming the METRC data does not provide

---

[10] Notably, another attachment to the Taxpayers' response to the IRS's motion to dismiss contradicts their argument that METRC does not track financial information. A document purporting to be an Enforcement Division guide to summonses for METRC data states that METRC tracks gross sales.

cost-of-goods-sold information, the data may still be relevant to the IRS's investigation in other ways. For example, it could provide inventory figures and help Agent Pringle "verify the accuracy of Standing Akimbo's internal books and records." App. vol. 1 at 73.

Finally, the Taxpayers concede that METRC information is relevant in determining whether they trafficked in marijuana—a relevant and proper inquiry the IRS may make in determining § 280E's application. *See High Desert*, 917 F.3d at 1187; *Alpenglow*, 894 F.3d at 1197. In fact, in *High Desert* we concluded that the summonses met *Powell*'s second factor, in part *because* the information sought "would be used to determine whether [the taxpayer] was growing or selling marijuana." *High Desert*, 917 F.3d at 1191. Accordingly, the Taxpayers fail to create a genuine dispute of material fact here. We agree with the district court that the IRS satisfied the second *Powell* factor.

### D. The IRS Does Not Already Possess the Information Summoned.

We next examine *Powell*'s third factor: whether "the information sought is . . . already within the Commissioner's possession." *Powell*, 379 U.S. at 57–58. Agent Pringle declared that the IRS did not already possess the information sought in the summonses. The summonses are also specific in what they request—licenses held by the Taxpayers and specific METRC reports for tax years 2014 and 2015. Agent Pringle explained that the Taxpayers had only partially responded to his Document Requests and that their production did not include any information reported to the Enforcement Division, including METRC data. This satisfies the IRS's slight burden.

21

The Taxpayers did not contest that this factor is satisfied until they objected to the magistrate judge's recommendation. So this argument is waived. *See ClearOne Commc'ns*, 653 F.3d at 1185. Even if we excused this waiver, the Taxpayers would still not prevail. They contend that this factor is not satisfied because "there is no legitimate basis to seek the preparation of METRC reports." App. vol. 2 at 95 (Objections to Recommendation). This contention rests on their assertion that they have already produced "voluminous" records for Agent Pringle's inspection, giving him enough information to complete his audit. *Id.* But this argument does not rebut the IRS's showing that it does not possess the information summoned. On appeal, the Taxpayers concede that they did not provide the requested METRC data. And the record offers no support that they have provided a list of the licenses they held in 2014 and 2015. The Taxpayers bear the burden of providing facts to contest the IRS's prima facie showing under *Powell. See, e.g.*, *Balanced Fin. Mgmt.*, 769 F.2d at 1444. They did not meet this burden. The Taxpayers failed to demonstrate the existence of a genuine factual dispute whether the IRS already possessed the information summoned; we agree with the district court that the IRS satisfied this factor.

### E.    The IRS Followed the Required Administrative Steps.

Finally, we turn to *Powell*'s fourth factor: whether "the administrative steps required by the Code have been followed." *Powell*, 379 U.S. at 58. Agent Pringle's declaration again satisfies the IRS's slight burden here. Agent Pringle stated that he "complied with the administrative steps that the Internal Revenue Code requires" in issuing the summonses. App. vol. 1 at 74–75. The Taxpayers do not contest on appeal

that this factor has been met. We agree with the district court that the IRS satisfied this final *Powell* factor.

* * *

Accordingly, we agree with the district court's determination that the IRS met its prima facie showing under *Powell* and that the Taxpayers failed to carry their "heavy burden" to factually oppose this showing. *Balanced Fin. Mgmt.*, 769 F.2d at 1449. We next turn to whether the Taxpayers have met their burden to make an affirmative defense against enforcement of the summonses.

## IV. The Taxpayers Fail to Establish a Lack of Good Faith or an Abuse of Process.

Besides contesting the IRS's prima facie *Powell* case for enforcement, the Taxpayers argue that the IRS did not act in good faith in issuing the summonses and that enforcing the summonses would abuse the court's process. In this vein, the Taxpayers raise five arguments against enforcement: (1) the IRS's ability to share the collected information with law enforcement constitutes bad faith, (2) enforcing the summonses would improperly force the Enforcement Division to create documents, (3) the summonses seek information that the Fourth Amendment protects, (4) the summonses are overbroad, and (5) enforcing the summonses would compel a violation of Colorado law. We address each argument in turn and conclude that all five arguments fail. The Taxpayers have not met their burden to factually support these arguments. The district court thus correctly ruled that the Taxpayers are not entitled to an evidentiary hearing or discovery and enforced the summonses.

### A. The IRS's Ability to Share the Collected Information with Law Enforcement Does Not Constitute Bad Faith.

The Taxpayers first contend, as a practical matter, that the IRS cannot split its civil investigatory authority from any possible associated criminal investigation into federal drug crimes. From this, the Taxpayers argue that the IRS's investigation is in bad faith. They assert that by refusing to grant them immunity from prosecution for federal drug crimes, the IRS has turned its investigation "'quasi-criminal' which triggers heightened constitutional rights for the taxpayer[s]." Appellants' Opening Br. at 25 (citing *Boyd v. United States*, 116 U.S. 616 (1886)). They also argue that the IRS cannot rely on 26 U.S.C. § 7602 to obtain the information summoned, because the information will be used, in part, to evaluate the presence of any federal drug crimes. To get there, the Taxpayers rely on the *Marchetti v. United States*, 390 U.S. 39 (1968), line of cases.[11]

Again, however, the Taxpayers did not argue this point before the magistrate judge, instead first raising it to the district court in their objections to the magistrate judge's recommendation. By not raising this point with the magistrate judge, they have waived it. *ClearOne Commc'ns*, 653 F.3d at 1185.

Forgiving this waiver would not help the Taxpayers. They proffer nothing to support their conclusory assertion that the IRS's refusal to grant immunity turned its

---

[11] Based on our review of the Taxpayers' arguments in the district court, the cases to which they refer besides *Marchetti* are *Leary v. United States*, 395 U.S. 6 (1969), *Grosso v. United States*, 390 U.S. 62 (1968), and *Haynes v. United States*, 390 U.S. 85 (1968).

civil tax investigation "quasi-criminal." They rely on *Boyd*, but *Boyd* dealt with a forfeiture prescribed by a criminal statute as a penalty for committing fraud. *See* 116 U.S. at 617, 634. There, the criminal statute authorized the government to compel offenders to produce information that would be used against them in a later criminal or forfeiture proceeding. *See id.* at 622–23. The Supreme Court determined that proceedings "for penalties and forfeitures, incurred by the commission of offenses against the law, are of [the] *quasi* criminal nature" necessitating Fourth and Fifth Amendment protections. *Id.* at 634. *Boyd* is thus inapposite to a strictly civil investigation into whether the Taxpayers violated the tax code. The tax code, and not a criminal statute, prescribes the IRS's enforcement of § 280E. Here, the IRS sought the information to determine the Taxpayers' tax liabilities.

The Taxpayers also proffer no evidence that the IRS's investigation "is part of a larger criminal investigation," apart from alleging that the IRS has refused to grant them immunity from any criminal prosecution.[12] Appellants' Opening Br. at 25. But

_____

[12] In a Rule 28(j) letter, the Taxpayers assert that this refusal to grant immunity, combined with the IRS's reservation of its right to prosecute, leads to a reasonable inference "that the Government intends to prosecute based upon the information provided in the audit." Taxpayers' Nov. 13, 2019 28(j) Letter at 2, ECF No. 10694621. The record does not show that the IRS has reserved rights to prosecute. And even if this were true and we drew the inference that the IRS intends to eventually refer this case to the DOJ for prosecution, this inference would not void the IRS's legitimate, tax-investigatory purpose in issuing the summonses. As the Supreme Court reasserted in *LaSalle*, there is "no reason to force the Service to choose either to forgo the use of congressionally authorized summonses or to abandon the option of recommending criminal prosecutions to the [DOJ]." 437 U.S. at 307. "Congress has not categorized tax fraud investigations into civil and criminal components[,]" so a summons may be issued for a proper purpose when there has

this does not refute Agent Pringle's statement that the IRS has not referred the case to the DOJ. The Taxpayers have offered no evidence that the government is criminally investigating them, let alone that the IRS is involved. *See LaSalle*, 437 U.S. at 311–12 ("The preceding discussion suggests why the primary limitation on the use of a summons occurs upon the recommendation of criminal prosecution to the [DOJ]. Only at that point do the criminal and civil aspects of a tax fraud case begin to diverge." (citations omitted)). In *LaSalle*, the Supreme Court reiterated its previous conclusion "that Congress had authorized the use of summonses in investigating potentially criminal conduct." *Id.* at 307 (citation omitted). So long as the IRS has not referred the case to the DOJ and has issued the summonses in good faith as defined by the *Powell* factors as here, the summonses are enforceable notwithstanding the possibility of later referral to the DOJ.[13] *See id.* at 307, 313–14.

---

been no "recommendation of criminal prosecution to the [DOJ]" as here. *Id.* at 311. The Taxpayers also assert that the summonses have no proper purpose absent the IRS explaining why the materials the Taxpayers have produced are insufficient to complete the audit. This argument fails because nothing requires such a showing from the IRS. It is enough that Agent Pringle attested that the Taxpayers "ha[d] not provided sufficient information to substantiate the figures shown on [their] tax returns." App. vol. 1 at 72.

[13] Notably, the IRS is limited in when it can disclose gathered information for nontax criminal-investigatory purposes. For example, the DOJ must seek a court order to obtain such information, and the IRS cannot disclose the information unless it is unavailable from other sources. *See* 26 U.S.C. § 6103(i)(1)(B). The Taxpayers asserted for the first time at oral argument that the IRS has authority to disclose information sua sponte in its discretion, relying on § 6103(a) and *United States v. One Coin-Operated Gaming Device*, 648 F.2d 1297 (10th Cir. 1981), but these sources do not support that assertion and § 6103(i) expressly precludes it.

26

*Marchetti* does not change this result or remove the IRS's authority to issue summonses under § 7602 when investigating potential § 280E violations. The Taxpayers rely on *Marchetti* to assert that if the IRS is using the information summoned to investigate federal drug crimes, the summonses would be "outside of [the] normal regulatory environment." Appellants' Opening Br. at 25. But *Marchetti* does not stand for that proposition, and the IRS's investigating drug activity within § 280E is a proper purpose. *See Alpenglow*, 894 F.3d at 1197; *Green Sol. Retail*, 855 F.3d at 1121. Further, in *Alpenglow* we distinguished *Marchetti* and its related cases from the IRS's investigations under § 280E. *See Alpenglow*, 894 F.3d at 1197. That analysis holds true here. The *Marchetti* line of cases is inapposite: those cases involve the invocation of a Fifth Amendment privilege to overcome IRS regulations requiring a taxpayer to disclose information carrying a real risk of self-incrimination. *See id.*; *see also Feinberg*, 916 F.3d at 1336 ("The petitioners in those cases, however, were prosecuted for failing to comply with a statute compelling them to provide self-incriminating information, and the Court determined the Fifth Amendment privilege provided a complete defense to that failure." (citations omitted)). The Taxpayers have not raised a Fifth Amendment challenge on appeal, and § 280E does not require disclosure of incriminating information. Thus, the Taxpayers have failed to factually establish that the IRS issued the summonses in bad faith. We agree with the district court that this argument fails.

27

### B. The Standing Akimbo Summons Does Not Improperly Force the Enforcement Division to Create Documents.

The Taxpayers next argue that enforcing the Standing Akimbo summons would be an abuse of process because the summons improperly compels the Enforcement Division to create documents.[14] They point to Samantha Murphy's declaration that Standing Akimbo does not produce the METRC reports summoned and that "[t]o the best of [her] knowledge, these reports are not reports that are ordinarily created by the Marijuana Enforcement Division." App. vol. 1 at 43. They also claim that they have raised a genuine issue of material fact based on the IRS's failure to provide evidence that the reports existed at the time they were summoned.

This argument fails. The Taxpayers bear the sole burden of factually supporting their affirmative defenses. *See, e.g.*, *Balanced Fin. Mgmt.*, 769 F.2d at 1444 ("[I]f at this stage the taxpayer cannot . . . factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." (alteration in original) (quoting *Garden State Nat'l Bank*, 607 F.2d at 71) (internal quotation marks omitted)). To proceed with this affirmative defense, the Taxpayers must provide evidence that the summons forces the Enforcement Division to create documents. They have not provided any such evidence. Samantha Murphy's conclusion that she believes the Enforcement Division does not routinely create the reports summoned is insufficient and does not support

---

[14] The government has not contested the Taxpayers' ability to raise this argument under the statutory scheme.

the defense.[15] *Argo*, 452 F.3d at 1200 ("Accordingly, at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded." (quoting *Tavery v. United States*, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994))).

On its face, the Standing Akimbo summons does not require the creation of new documents. The summons requests that the Enforcement Division provide a "[c]opy" of the reports summoned. App. vol. 1 at 18. A copy of something generally assumes that the something already exists. *See Copy*, Merriam-Webster, https://www.merriam-webster.com/dictionary/copy (last visited Jan. 31, 2020). With no original report, no copy is possible. If the Enforcement Division does not have the requested reports, then by the IRS's guidelines the Enforcement Division need not create and produce them. Nothing requires the Enforcement Division to create the records, and the summons does not purport to say otherwise. *See United States v. Davey*, 543 F.2d 996, 1000 (2d Cir. 1976) ("[Section] 7602 does not require preparation or production of records not yet in existence." (citation omitted)).

Further, despite the Taxpayers' argument, the IRS need not identify what records exist before enforcing the summons, because nothing requires the IRS to do so. *E.g.*, *High Desert*, 917 F.3d at 1181–82 (noting that the IRS must show that it did not refer the case to the DOJ and that it meets the *Powell* factors to obtain enforcement of a summons). If the Taxpayers are arguing that the district court extended the summons to reach the entire METRC database, this argument

---

[15] Further, the Taxpayers provide other hearsay evidence that contradicts Samantha Murphy's statement. *See supra* note 10.

misconstrues the district court's language and also fails. We thus agree with the district court that the Taxpayers have failed to meet their burden to establish this affirmative defense.

### C. The IRS Does Not Need Probable Cause to Obtain the METRC Data Summoned.

The Taxpayers next argue that they have a reasonable expectation of privacy in the METRC data because Colorado law criminalizes its disclosure. They argue that the district court misapplied controlling Fourth Amendment law in applying the third-party doctrine without considering *Carpenter v. United States*, 138 S. Ct. 2206 (2018). The Taxpayers assert that *Carpenter* supports their position that they have a reasonable expectation of privacy in the METRC data, which would require that the IRS obtain a search warrant supported by probable cause.

This argument also fails. The Taxpayers have no reasonable expectation of privacy in the METRC data collected on their business. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It applies only when "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted). But "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 743–44 (citing *United States v. Miller*, 425 U.S. 435, 442–44 (1976); *Couch v. United States*, 409 U.S. 322, 335–36 (1973); *United*

*States v. White*, 401 U.S. 745, 752 (1971) (plurality opinion); *Hoffa v. United States*, 385 U.S. 293, 302 (1966); *Lopez v. United States*, 373 U.S. 427 (1963)). This principle, known as the third-party doctrine, applies "even if the information is revealed on the assumption that it will be used only for a limited purpose." *Miller*, 425 U.S. at 443 (citations omitted). The Supreme Court recently reaffirmed this doctrine in *Carpenter*. *See* 138 S. Ct. at 2220 ("We do not disturb the application of *Smith* and *Miller* . . . .").

Contrary to the Taxpayers' assertions, *Carpenter*'s holding precluding the third-party doctrine's application does not apply to them. *Carpenter* examined a narrow issue: whether the third-party doctrine should apply to the collection of cell-site-location information (CSLI). *Id.* The METRC records differ markedly from CSLI. METRC tracks the movement of plants, and CSLI tracks people. Further, the Taxpayers voluntarily provided the information summoned to the Enforcement Division so they could legally conduct their business; this differs from CSLI, which collects information "without any affirmative act on the part of the user beyond powering up." *Id. Carpenter*'s analysis in precluding the third-party doctrine's application to CSLI is thus inapplicable here.

The third-party doctrine applies to the METRC data summoned here. The Taxpayers chose to operate a marijuana business under Colorado law and, thus, agreed to provide certain information to the Enforcement Division. As required by law, the METRC database stores this information, constructing reports that the Enforcement Division may access as needed. The METRC reports are the

31

Enforcement Division's property—the Taxpayers have no ownership, possession, or propriety interest in them. *See Miller*, 425 U.S. at 440–43; *cf. United States v. Leary*, 846 F.2d 592, 598 (10th Cir. 1988) (finding a reasonable expectation of privacy when defendants "retained control over the premises and records"). So the Taxpayers have no expectation of privacy in these reports. *See Miller*, 425 U.S. at 440–43. Because the Taxpayers have no Fourth Amendment right at stake, the IRS need not obtain a warrant supported by probable cause to get the records. *See id.* at 444.

Finally, though we agree that Colorado law deems the METRC records confidential, we do not agree that this confidentiality provides the Taxpayers with a Fourth Amendment interest in them. The statute they rely on to establish that the METRC information is confidential has been repealed and its amended version has been relocated. *See* Colo. Rev. Stat. Ann. § 12-43.3-202(d) (West 2018). The now-applicable statute provides that the Enforcement Division "shall maintain the confidentiality of . . . information obtained from a medical marijuana or retail marijuana licensee . . . that [is] exempt from public inspection pursuant to state law." Colo. Rev. Stat. Ann. § 44-10-204(1)(a) (West 2020). But such information "may be used . . . for investigation or enforcement of any international, federal, state, or local securities law or regulations[.]" *Id.* And "[n]othing in this article 10 limits a law enforcement agency's ability to investigate unlawful activity in relation to a medical marijuana business or retail marijuana business." *Id.* § 44-10-202(3).

We thus fail to see how this statute precludes the sharing of such information with the IRS—an agency tasked with enforcing federal-tax laws with its own duty to

32

keep information confidential. *See* 26 U.S.C. § 6103(a) (providing that an agent must maintain as confidential any return information obtained "in connection with his service"). And even if the statute somehow provides the Taxpayers a right of privacy here, the statute would be preempted by the Supremacy Clause. Under the Supremacy Clause, state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). The Taxpayers' reading of the statute would substantially impede the IRS's ability to summon METRC records under § 7602.[16]

The IRS has met the *Powell* factors establishing the Fourth Amendment reasonableness of the Standing Akimbo summons. The Taxpayers have failed to rebut this showing, so the IRS does not need probable cause. *See, e.g.*, *Powell*, 379 U.S. at 51 (holding that the government needs to show probable cause only when the taxpayer raises a substantial question that judicial enforcement constitutes an abuse of process); *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir. 1985) ("The enforcement of an IRS summons does not violate the fourth amendment as long as the IRS has complied with the *Powell* requirements." (citations omitted)); *United States v. Shlom*, 420 F.2d 263, 266 (2d Cir. 1969) (stating that a valid summons does not constitute a search and seizure). We thus agree with the district court that the Taxpayers failed to establish this defense.

---

[16] For this reason, we need not conduct a full preemption analysis. *See Presley v. United States*, 895 F.3d 1284, 1292 n.6 (11th Cir. 2018).

**D.     The Summonses Are Not Overbroad.**

The Taxpayers next assert that the IRS did not issue the summonses in good faith because they are overbroad. They point out that the Taxpayers summonses request a list of all licenses held by the Taxpayers for the 2014 and 2015 tax years.[17] They argue that because this "go[es] way beyond asking about ownership in Standing Akimbo," the summonses are overbroad. Appellants' Opening Br. at 34.

This argument also fails. As discussed, the Taxpayers bear a heavy burden to provide specific facts supporting their defense. *See Balanced Fin. Mgmt.*, 769 F.2d at 1444. They provide no authority for their contention that the summonses are overbroad for failure to explain the IRS's need for information about the Taxpayers' licenses apart from Standing Akimbo. *Powell* does not require that the IRS explain why it seeks information beyond showing its potential relevance to a legitimate purpose. The IRS has shown the information summoned is relevant, and the Taxpayers failed to rebut this showing. *See supra* Section III.C.

Further, the summonses specifically describe the information they seek and limit the request to the tax years in question. The summonses are thus proportionate to the ends sought and are not a "fishing expedition." *United States v. Coopers & Lybrand*, 550 F.2d 615, 621 (10th Cir. 1977) (quoting *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973)) (internal quotation marks omitted). Under these facts,

---

[17] The Taxpayers do not appear to contest the reasonableness of the IRS's seeking a list of licenses held by Standing Akimbo.

34

the summonses cannot be overbroad. *See United States v. Berney*, 713 F.2d 568, 572

(10th Cir. 1983). We agree with the district court that the Taxpayers failed to

establish this affirmative defense.[18]

### E. Enforcing the Standing Akimbo Summons Would Not Compel a Violation of Colorado Law.

In the Taxpayers' last attempt to assert a defense to enforcement, they argue

that enforcing the Standing Akimbo summons would require the individual

complying with it to violate Colorado law.[19] They point to two Colorado statutes: one

making the METRC data confidential and one making disclosure of the data a

misdemeanor. They argue that the Supremacy Clause does not preempt these statutes

---

[18] The magistrate judge appears to have misunderstood the Taxpayers' argument and addressed only the Standing Akimbo summons. We need not remand, however, because we may affirm on any basis adequately supported by the record. *E.g.*, *High Desert*, 917 F.3d at 1181.

[19] The government argues that the Taxpayers lack standing to bring this argument. In an unpublished case, we recognized that "plaintiffs lack standing 'to assert as defenses enforcement issues which only affect the interests of the third-party record keeper, such as the defense that the third-party record keeper was not properly served with the summons.'" *Gass v. U.S. Dep't of Treasury*, 216 F.3d 1087, 2000 WL 743671, at *5 (10th Cir. 2000) (unpublished table opinion) (quoting *Wright v. United States*, 964 F. Supp. 336, 338 (M.D. Fla. 1997); and citing *King v. United States*, 684 F. Supp. 1038, 1041 (D. Neb. 1987)). Arguing that a summons requires an individual to commit a crime and risk imprisonment is very different from arguing improper service or that a summons is unduly burdensome. *Cf. King*, 684 F. Supp. at 1041. Further, it appears that, if the METRC data is confidential as the Taxpayers argue and if the summons were instead directed at them, the Taxpayers' turning over the data summoned would also constitute a crime. *See* Colo. Rev. Stat. Ann. § 44-10-201(4) (West 2020) ("*Any person* who discloses confidential records or information in violation of the provisions of this article 10 commits a class 1 misdemeanor . . . ." (emphasis added)). So this issue affects more than the Enforcement Division's interests, and we conclude that the Taxpayers have standing to bring this argument.

and that the statutes protect their Fifth Amendment rights against forced disclosure of federal drug crimes.

The Colorado legislature has repealed the statutes the Taxpayers rely upon in their briefs.[20] The current statutes state that the Enforcement Division

> shall maintain the confidentiality of:
>
> (a) Reports or other information obtained from a medical marijuana or retail marijuana licensee . . . containing any individualized data, information, or records related to the applicant or licensee or its operation, including sales information, leases, business organization records, financial records, tax returns, credit reports, cultivation information, testing results, and security information and plans, or revealing any customer information, or any other records that are exempt from public inspection pursuant to state law. Such reports or other information may be used only for a purpose authorized by this article 10, for investigation or enforcement of any international, federal, state, or local securities law or regulations, or for any other state or local law enforcement purpose.

Colo. Rev. Stat. Ann. § 44-10-204(1)(a). Certain disclosures constitute a crime: "Any person who discloses confidential records or information in violation of the provisions of this article 10 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501." *Id.* § 44-10-201(4). Article 10 also provides: "Nothing in this article 10 limits a law enforcement agency's ability to investigate unlawful activity in relation to a medical marijuana business or retail marijuana business." *Id.* § 44-10-202(3).

Section 204(1)(a) allows disclosure of the confidential information for "a purpose authorized by this article 10," such as section 202(3)'s allowing a law-enforcement agency's investigation into a medical marijuana dispensary's unlawful activity. Here, the

---

[20] The legislature repealed the statutes effective October 1, 2018.

IRS's investigation into whether the Taxpayers' unlawfully claimed business deductions falls within this authorized purpose. So an Enforcement Division employee's compliance with the summons seeking the confidential METRC information would not violate "the provisions of this article 10" and, thus, would not constitute a crime. *Id.* § 44-10-201(4).

The Taxpayers' interpretation of the statutory scheme is unpersuasive.[21] It ignores section 202(3)'s plain language disallowing limitations on a law-enforcement agency's investigation. Further, the Taxpayers provide no evidence that Colorado has prosecuted any Enforcement Division employees for complying with a summons requesting METRC reports or that the Enforcement Division has objected to any such summons because it perceives that its compliance constitutes a crime.[22] Finally, the Taxpayers' reliance on the Fifth Amendment is misplaced because the Enforcement

---

[21] Under the Taxpayers' interpretation, the Enforcement Division officials would violate Colorado law by complying with the IRS's summons. This would impede the IRS's ability to summon information relevant to completing its required § 6201 duties. The Supremacy Clause enables federal law to preempt state law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67. So, even if the Taxpayers' interpretation were correct, the Colorado statutes would have to yield. *See Presley*, 895 F.3d at 1292 n.6.

[22] In their reply brief, the Taxpayers attach a motion filed in the United States Tax Court showing Arizona's views on its own "substantively identical marijuana privacy laws." Appellants' Reply Br. at 12. But the laws are not "substantively identical." *Compare* Ariz. Rev. Stat. Ann. § 36-2810(A) (West 2019) (preventing disclosure "except as necessary for authorized employees of the department to perform official duties"), *with* Colo. Rev. Stat. Ann. § 44-10-204. We do not consider this motion, which provides no insight into how Colorado views its laws, or the government's Rule 28(j) letter response. It is telling that, unlike Arizona, Colorado apparently has not contested enforcement of an IRS summons requesting METRC information.

Division—a third party—holds the information, so the Taxpayers have no Fifth Amendment interests in it. *See First Nat'l Bank, Englewood v. United States*, 701 F.2d 115, 117 (10th Cir. 1983) ("There can be no violation of one's Fifth Amendment right not to testify against oneself where the records are in the hands of a third party; hence, one cannot complain on this ground about a subpoena directed to third parties to produce records."). The Taxpayers have failed to carry their burden on this attempt to prevent enforcement of the Standing Akimbo summons. We agree with the district court that enforcing this summons does not compel a violation of state law.

\* \* \*

The Taxpayers did not meet their burden to show that the IRS acted in bad faith in issuing the summonses or that it is abusing the court's process in asking for their enforcement. The Taxpayers' appended declarations neither create a genuine issue of material fact nor support their defenses, so the district court correctly enforced the summonses without discovery or a hearing. *See Balanced Fin. Mgmt.*, 769 F.2d at 1444 & n.2. With no genuine issue of material fact, the district court properly entered judgment in the IRS's favor, and we affirm.[23]

---

[23] The Taxpayers assert in a Rule 28(j) letter that without service of a summons under Federal Rule of Civil Procedure 4 to Colorado, "no order against Colorado is valid." Taxpayers' Nov. 4, 2019 28(j) Letter at 1, ECF No. 10692528. This argument is waived because the Taxpayers waited to improperly raise it in a Rule 28(j) letter. *See, e.g.*, *Feinberg*, 916 F.3d at 1337 n.2; *Flores-Molina*, 850 F.3d at 1172 n.16. This argument is also meritless. The Taxpayers served the Enforcement Division when they filed the petition, and the Enforcement Division is "bound by the

**CONCLUSION**

We conclude that the Taxpayers have failed to overcome the IRS's showing of good faith under *Powell* and have failed to establish that enforcing the summonses would constitute an abuse of process. The Taxpayers' failures mean that they are not entitled to an evidentiary hearing or to limited discovery. We thus affirm the district court's denial of the petition to quash, its judgment in favor of the government, and its enforcement of the summonses.

---

decision in [this] proceeding" despite its non-intervention. 26 U.S.C. § 7609(b)(2)(C).